288 N.J. Super. 87 (1996)
671 A.2d 1088
SEASHORE AMBULATORY SURGERY CENTER, INC., MORRIS ANTEBI, M.D., AND PAIN SPECIALISTS, P.A., APPELLANTS,
v.
NEW JERSEY DEPARTMENT OF HEALTH, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted October 30, 1995.
Decided March 1, 1996.
*89 Before Judges PETRELLA, SKILLMAN and EICHEN.
Dechert, Price & Rhoads, attorneys for appellants (Bruce W. Clark, on the brief).
Deborah T. Poritz, Attorney General, attorney for respondent (Michael J. Haas, Sr. Deputy Attorney General, of counsel; Mary F. Rubinstein, Deputy Attorney General, on the brief).
EICHEN, J.A.D.
This appeal involves the applicability of certificate of need (CON) regulations governing the initiation of ambulatory surgical facilities, N.J.A.C. 8:33S-1.1 to -1.7 (current regulations), to physicians in their private practice. The Department of Health (DOH) determined appellants were required to obtain a CON for certain uses of an ambulatory surgical facility they had initiated after regulations governing such facilities had lapsed, N.J.A.C. 8:33A-2.1 to -2.7, (the prior regulations) and before the effective date of the current regulations. Appellants challenge that determination on this appeal.
Morris Antebi, M.D., an anesthesiologist, operates an ambulatory surgical facility, Seashore Ambulatory Surgery Center, Inc. (Seashore), and carries out his private practice of anesthesiology through a professional association, Pain Specialists, P.A. (collectively *90 appellants). Dr. Antebi is currently the sole member of his professional association.
On October 27, 1994, the Assistant Commissioner of Health Paul R. Langevin, Jr. issued a letter decision permitting appellants to use one operating room at Seashore without obtaining a CON, but directing that they cease using the second operating room and limit use of the first operating room to physicians who are associates or employees of Dr. Antebi's professional association until a CON is obtained.
The Assistant Commissioner determined that a CON was required for the second operating room even though the prior regulations had expired. The DOH emphasized not only that the CON requirement for a two-operating room surgical facility existed in both the prior and current regulations, but also that the lapse in the prior regulations occurred during a moratorium on CON applications, and that the DOH had clearly informed Dr. Antebi he could not utilize more than one operating room until he obtained a CON. Further, the Assistant Commissioner noted that Dr. Antebi was aware of the CON requirement and recognized and acknowledged the DOH's "right to exercise regulatory authority over him."
The Assistant Commissioner also interpreted the current regulations, N.J.A.C. 8:33S-1.1 to -1.7, to provide that appellants are exempt from the CON requirement only if the single operating room is limited to the exclusive use of "Dr. Antebi and any other physician who is a member or full-time employee of his professional association." Noting that Dr. Antebi could perform pain management nerve blocks without outside physicians, the Assistant Commissioner rejected appellants' contentions that Dr. Antebi could not carry out his practice of anesthesiology without the involvement of unassociated physicians.
On appeal of the Assistant Commissioner's decision, appellants contend the current regulations do not apply to their second operating room because they initiated their ambulatory surgical facility when there were no regulations regarding surgical facilities *91 in effect. They argue the current regulations only apply to "new" ambulatory surgical facilities and, therefore, cannot apply to their "previously existing operating rooms." Essentially, they argue that because the language of the current regulations refers only to "new" facilities, the regulations are "unambiguously prospective" and do "not contain the clear expression of legislative intent necessary to justify a retroactive application."
Appellants also contend on appeal they do not have to obtain a CON in order to invite unassociated physicians to perform surgeries with Dr. Antebi at Seashore because even if the current regulations apply retroactively to the ambulatory facility, they do not cover the situation where an anesthesiologist invites outside surgeons to use the facility with him.
The DOH concedes on appeal that no regulations were in effect at the time Dr. Antebi opened his two-operating room facility, but maintains it does not matter because the current regulations apply retroactively to appellants, requiring them to obtain a CON. The DOH additionally argues that the current regulations clearly provide that Dr. Antebi is exempt from the CON requirement only for his or his associates' exclusive use of a single operating room.
We have carefully reviewed the record, the parties' contentions, their briefs and the legal arguments, and affirm the decision of the Assistant Commissioner.

I.
To understand this controversy, we discuss the legislative history and pertinent events. In 1971, the Legislature enacted the Health Care Facilities Planning Act, L. 1971, c. 136, N.J.S.A. 26:2H-1 to -26, (the Act). At that time, the Legislature declared as the public policy of this state that hospital and related health care services "efficiently" provide care "of the highest quality ... at a reasonable cost" based on "demonstrated need." N.J.S.A. 26:2H-1. The Act required a CON for the initiation of any new *92 health care facility[1] or service except those "provided by a physician in his [or her] private practice." N.J.S.A. 26:2H-2b (1987) (amended 1991); Marsh v. Finley, 160 N.J. Super. 193, 198-99, 389 A.2d 490 (App.Div.), certif. denied, 78 N.J. 396, 396 A.2d 583 (1978). Thus, as of 1971, a health care service was not subject to a CON requirement when provided by a physician in his or her private practice. This blanket exemption continued until 1991.
In 1985, pursuant to the Act, the DOH promulgated "surgical facilities" regulations in order "to guide the planning and review of all Certificate of Need applications for new and expanded surgical facilities in the State." 17 N.J.R. 154 (Jan. 21, 1985). The surgical facilities regulations specifically required a CON "for any new surgical facility" with two or more operating rooms. N.J.A.C. 8:33A-2.2 and 2.3.[2] On February 20, 1990, these regulations were readopted without change, indicating the DOH's interest in continuing to regulate two-operating room facilities. The DOH set an operative period of two years for the regulations, opining that two years would "provide adequate time to evaluate the current need methodology" for surgical facilities. 21 N.J.R. 3888 (Dec. 18, 1989).
On July 1, 1991, the Legislature enacted an amendment to the Act which narrowed the statutory CON exemption for physicians in their private practice.[3]See Associates in Radiation v. Siegel, 272 N.J. Super. 208, 216, 639 A.2d 729 (App.Div. 1994); In re *93 Adoption of Regulations Governing the State Health Plan, 262 N.J. Super. 469, 474, 621 A.2d 484 (App.Div. 1993), aff'd, 135 N.J. 24, 637 A.2d 1246 (1994). The Act, as amended, requires a physician initiating a health care service "in his [or her] private practice" to obtain a CON if such service "is the subject of a health planning regulation adopted by the Department of Health." N.J.S.A. 26:2H-2b, -7. Because surgical facilities were the subject of regulation, the 1991 amendment established, for the first time, that a physician initiating a surgical facility with two or more operating rooms in his or her private practice would be required to obtain a CON.
On the same date the amendment was enacted (July 1, 1991), the DOH announced it would temporarily suspend acceptance of CON applications for surgical facilities in order for the DOH to "propose amendments/revisions to the State's current Surgical Facilities rule [N.J.A.C. 8:33A-2.1 to -2.7]." 23 N.J.R. 2063 (July 1, 1991). The DOH then imposed a moratorium on all CON applications, effective August 22, 1991 until December 31, 1992, with a few unrelated exceptions, in order to enable the DOH to concentrate on implementing the 1991 amendment. 24 N.J.R. 173 (Jan. 21, 1992). On February 20, 1992, the CON regulations for surgical facilities, N.J.A.C. 8:33A-2.1 to -2.7, expired without replacement, although the moratorium was still in effect.
On April 15, 1992, after the regulations expired but during the moratorium, Dr. Antebi wrote to the DOH inquiring whether he needed a CON "to build a one room ambulatory surgical center where [he could] perform [nerve] blocks for [his] chronic pain patients" and which would "be available to some surgeons ... to do their ... surgeries." (emphasis added) On May 5, 1992, the DOH advised Dr. Antebi it could not "make an appropriate determination based on the information provided" and asked Dr. Antebi to complete a CON questionnaire.
Shortly thereafter, in July 1992, Dr. Antebi entered into a contract to purchase property located in Northfield, Atlantic County, from the Resolution Trust Corporation. The property *94 had been previously occupied by a medical facility consisting of two operating rooms. Four months later, on November 10, 1992, Dr. Antebi replied to the DOH that he had purchased "a medical-ambulatory surgical facility building" consisting of "one operating room and one recovery room." (emphasis added) He advised the DOH his "intention [was] to solicit surgeons to do surgical procedures in that facility, ... [such as] breast biopsies, tubal ligation, D & C, knee arthroscopy, epidural injections of steroids" and the like. The following month, on December 31, 1992, the official moratorium on CON applications ended. Nonetheless, the DOH did not resume accepting applications for new surgical facilities until October 1993 when the current regulations became effective.
On March 30, 1993, the DOH advised Dr. Antebi that his proposal implicated "[t]he initiation of a health care service [which] requires a certificate of need [and that t]he only exception to this requirement is for a service provided by a physician in his or her private practice." The DOH informed Dr. Antebi that he did not meet this exception because the proposed services included inviting other physicians from outside his practice to use his surgical facility with him. The DOH further informed Dr. Antebi that CON applications for surgical services would not be accepted until "a call for certificate of need applications was issued consistent with the Certificate of Need and Review Process."
The following month, in April 1993, Dr. Antebi closed title to the Northfield property, named the facility "Seashore Ambulatory Surgery Center," and began using the two operating rooms. At the same time, however, he advised the DOH, by letter dated April 27, 1993, that he had "revised [his] plans for use of the single operating room" (emphasis added) to comply with the DOH's stated requirements. He wrote:
I plan to use the operating room in connection with my private practice of anesthesiology. Should I expand the use of the operating room to function as an ambulatory surgical facility, as described in your letter, I will comply with all Certificate of Need and Licensing Application requirements. (emphasis added)
*95 The letter concluded with an invitation to the DOH to "inspect the single operating room for participating in the Medicare program." (emphasis added)
On May 21 and 28, 1993, Dr. Antebi supplemented his submissions to the DOH, pursuant to the agency's request for further information concerning the type of procedures Dr. Antebi anticipated performing. Dr. Antebi represented to the DOH he would be performing epidural injections and a "wide array of nerve blocks." He did not mention the second operating room or that any unassociated physicians would be performing surgical procedures.
On June 2, 1993, the DOH approved the use of "one operating room to serve [his] private practice of medicine" without the necessity of obtaining a certificate of need. The DOH advised Dr. Antebi that no CON would be required, pursuant to the Act as amended and based upon Dr. Antebi's representation that he was "currently in solo practice and that the subject operating room would be used exclusively by [him] in [his] private medical practice" for performing nerve blocks. At that time, the DOH advised Dr. Antebi that the Commissioner was proposing new surgical facilities rules, N.J.A.C. 8:33S-1.1 to -1.7, which would continue the exemption to the CON requirement for a physician establishing a single operating room for his or her private practice of medicine, but that "in no case [shall] a physician or a physician group with more than a single operating room be permitted this physician practice exemption." That same month, on June 21, 1993, the DOH announced its proposed new CON regulations for ambulatory surgical facilities, N.J.A.C. 8:33S-1.1 to -1.7. 25 N.J.R. 2790 (June 21, 1993).
In August 1993, as the DOH later learned, appellants began soliciting physicians to perform surgical procedures at appellants' surgical facility. A few months later, on October 1, 1993, the DOH resumed accepting CON applications for surgical facilities. On that same date, Dr. Antebi wrote to the DOH and, for the first time, claimed that his surgical facility contained two operating *96 rooms which he asserted had "been in use since April 1992 [sic]" and that because these two operating rooms were established when there were no certificate of need regulations concerning surgical facilities in effect, the operating rooms were "grandfathered."
On October 4, 1993, the current regulations became effective, providing in relevant part:
A certificate of need shall be required for any new surgical facility as well as for additional operating rooms to be added to an existing surgical facility.
[N.J.A.C. 8:33S-1.3(a).]
A physician or professional association seeking to establish a single operating room surgical practice limited to his or her or their private practice is exempted from certificate of need requirements. However, in no case shall a surgeon practice with more than a single operating room be permitted this physician practice exemption.
[N.J.A.C. 8:33S-1.5.]
Observing that the 1991 amendment to the Act "contemplated the creation of a `level playing field' for health care providers by... extend[ing] the [CON] requirement ... to any person, including a physician, for the initiation of a health care service which is the subject of a health planning regulation," the DOH explained that the new surgical facilities regulations
favor[] the continuation of the exemption to the certificate of need requirement where a physician or physician group seeks to establish a single operating room for the exclusive use of the physician or the physicians comprising a professional association or corporation in their private practice of medicine[,]... [but] that in no case shall a physician or a physician group with more than a single operating room be permitted this physician practice exemption.
[25 N.J.R. 4628 (Oct. 4, 1993).]
The DOH noted the overall purpose of the surgical facilities regulations is "to minimize the costly duplication of surgical services and to promote needed services that maintain and improve the health status of the population." N.J.A.C. 8:33S-1.1.
Shortly thereafter, on October 15, 1993, the Acting Deputy Commissioner of the DOH informed Dr. Antebi that, if the operating room for which he was soliciting physicians was the same as the one the DOH had authorized for his exclusive use, then Dr. Antebi must obtain a CON in order to make the *97 operating room available to physicians who are not members or full-time employees of his professional association.
Thereafter, Dr. Antebi agreed to "refrain from using the second operating room for surgical procedures and from inviting unassociated physicians to participate in any procedures" pending this appeal.

II.
The parties agree that the prior regulations, N.J.A.C. 8:33A-2.1 to -2.7, had expired and no regulations governing ambulatory surgical facilities existed at the time Dr. Antebi began using his two operating rooms. Nonetheless, the DOH contends appellants' proposed use of the facility is subject to CON review because the current regulations, adopted on October 4, 1993, N.J.A.C. 8:33S-1.1 to -1.7, apply retroactively to appellants' facility.
The general rule is that legislation and regulations have prospective effect. Frank A. Greek & Sons, Inc. v. Township of South Brunswick, 257 N.J. Super. 94, 106, 607 A.2d 1359 (App. Div.), certif. denied sub. nom, 130 N.J. 602, 617 A.2d 1223 (1992), cert. denied, 507 U.S. 1031, 113 S.Ct. 1848, 123 L.Ed.2d 472 (1993) (citing Gibbons v. Gibbons, 86 N.J. 515, 522-23, 432 A.2d 80 (1981) and the dissent in In re Adoption of N.J.A.C. 7:7A-1.4, 240 N.J. Super. 224, 239, 573 A.2d 162 (App.Div. 1989), rev'd on dissent, 118 N.J. 552, 573 A.2d 143 (1990)). Prospectivity is favored because "retroactive application of new laws involves a high risk of being unfair." Gibbons, supra, 86 N.J. at 522, 432 A.2d 80. However, the prospectivity rule is subject to certain exceptions. Thus, regulations may be retroactively applied where "the Legislature has expressed its intent, either explicitly or implicitly," that they should be so applied, "when the reasonable expectations of those affected by the [regulations] warrant such application," or when the regulation is ameliorative or curative. Twiss v. State, Dept. of Treasury, 124 N.J. 461, 467, 591 A.2d 913 (1991). See also Frank A. Greek & Sons, Inc., supra, 257 N.J. Super. at 106, 607 A.2d 1359 (citing Gibbons, supra, 86 N.J. at 522, 432 A.2d 80). *98 However, retroactive application can only apply if such application will not result in "`manifest injustice' to a party adversely affected." Gibbons, supra, 86 N.J. at 523, 432 A.2d 80.
Applying these principles to the present case, we conclude the current regulations, N.J.A.C. 8:33S-1.1 to -1.7, apply retroactively to surgical facilities initiated by physicians in their private practice subsequent to the effective date of the 1991 amendment to the Act, including appellants' surgical facility. We reject as clearly without merit appellants' argument that the use of the phrase "new surgical facility" in the regulation, N.J.A.C. 8:33S-1.3(a), evidences legislative intent to apply the regulations "purely prospective[ly]."
We are satisfied that by adopting the CON requirement for physicians establishing a two-operating room surgical facility in their private practice, the DOH expressed its intent that the CON requirement apply. Both the prior and current regulations explicitly require a CON for a surgical facility with two or more operating rooms, and since the 1991 amendment these regulations have applied to physicians in their private practice. Additionally, in 1990, the DOH explained that the regulations at N.J.A.C. 8:33A were set to expire early only because the DOH needed "adequate time" to revise the methodology for reviewing CON applications.[4] 21 N.J.R. 3888 (Dec. 18, 1989).
We note the current regulations reflect the DOH's continuing efforts to "guide the planning and review of all Certificate of Need Applications for new and expanded surgical facilities in the State." See 17 N.J.R. 154 (Jan. 21, 1985). We perceive retroactive application to surgical facilities operated by physicians in their private practice commencing with the effective date of the 1991 *99 amendment to the Act as necessary in order to achieve the legislative intent, namely, to "efficiently" provide care "of the highest quality ... at a reasonable cost" based on "demonstrated need." N.J.S.A. 26:2H-1. See N.J.A.C. 8:33S-1.1 (the purpose of the regulations is "to minimize the costly duplication of surgical services and to promote needed services that maintain and improve the health status of the population.") Moreover, limited retroactive application fulfills the legislative goal evidenced by the 1991 amendment which broadened the definition of health care services to "level the playing field" so that all providers of regulated health care services, including those in private practice, would be subject to CON review.
We also conclude retroactive application of the current regulations to appellants can be justified based on appellants' reasonable expectations evidenced by the course of dealing between Dr. Antebi and the DOH. Dr. Antebi was aware the DOH had asserted its right to exercise regulatory power over the initiation of appellants' ambulatory surgical facility. Although Dr. Antebi now contests the DOH's authority to require appellants to obtain a CON, he did not question that authority during the one and one-half years that he submitted to the agency's directions. Further, from April 1992 to October 1993, Dr. Antebi represented to the DOH that Seashore had only one operating room and communicated extensively with the agency in order to gain exemption from the CON requirements for that operating room. Before Dr. Antebi even contracted to acquire Seashore in July 1992, the DOH informed him that his proposed use of the facility might be subject to CON requirements. Additionally, in March 1993, before Dr. Antebi closed title to the Northfield property, the DOH again confirmed that his proposed use of the facility was subject to CON requirements. Dr. Antebi was clearly aware that the DOH considered his proposed facility subject to the CON review process as evidenced by his agreement to submit to that process. The circumstances of this case clearly demonstrate appellants had no reasonable expectation their proposed use of their facility would not require a CON.
*100 Finally, we conclude retroactive application of the current regulations to appellants will not result in a "manifest injustice." Gibbons, supra, 86 N.J. at 523, 432 A.2d 80. Appellants' argument that the failure to "grandfather" the second operating room deprives him of vested property rights is clearly without merit and does not warrant discussion. R. 2:11-3(e)(1)(E).

III.
Our review of the record and applicable legal principles also persuades us the DOH did not err in concluding that appellants are not entitled to invite unassociated physicians to use their exempted single operating room without a CON. In reaching this conclusion, the Assistant Commissioner relied upon the current regulations. Appellants argue these regulations do not apply to them because they were "grandfathered in" before the regulations were promulgated and, therefore, the DOH cannot regulate their proposed use. However, that argument misses the point because the Act itself expressly limits the exemption. The clear language of the Act provides that "no new health care service shall be instituted ... except upon application for and receipt of a certificate of need." N.J.S.A. 26:2H-7. It defines "health care service" specifically to "exclud[e] services provided by a physician in his private practice." N.J.S.A. 26:2H-2b; Marsh v. Finley, supra, 160 N.J. Super. at 198-99, 389 A.2d 490. Thus, both the statutory and regulatory language amply support the Assistant Commissioner's determination that the CON exemption does not extend to a situation where a physician invites other physicians outside his professional association to perform surgical procedures in his operating room, regardless of his participation in the procedures.
Were Dr. Antebi, an anesthesiologist, permitted to invite outside surgeons to use his facility as he proposes, the facility would no longer be used for services provided by him in his private practice. The services provided would be those of outside surgeons performed on their patients, in Dr. Antebi's operating room. The patients and surgical procedures would necessarily be determined *101 by the private practices of unassociated surgeons and, therefore, it could no longer be said that the "practice is limited to [Dr. Antebi's] ... private practice." See N.J.A.C. 8:33S-1.5. Dr. Antebi's facility would essentially be open to any surgeon's use, provided the surgeon uses Dr. Antebi as the anesthesiologist. We do not perceive how the limited CON exemption can reasonably be interpreted to exclude from the DOH's regulatory control such extended use, especially where the purpose of the enabling legislation is to promote efficiency and cost containment while assuring quality care. N.J.S.A. 26:2H-1.
As the DOH itself noted in promulgating the current regulations, the regulations "favor[] the continuation of the exemption to the certificate of need requirement where a physician or physician group seeks to establish a single operating room for the exclusive use of the physician or the physicians comprising a professional association or corporation in their private practice of medicine." 25 N.J.R. 4628 (Oct. 4, 1993). This conclusion is entirely consistent with the legislative intent of the Act.
We conclude the Assistant Commissioner's decision is supported by substantial credible evidence in the record, and is not arbitrary, capricious or unreasonable, or in violation of any expressed or implied legislative policies. Henry v. Rahway State Prison, 81 N.J. 571, 579-80, 410 A.2d 686 (1980); Close v. Kordulak Bros., 44 N.J. 589, 599, 210 A.2d 753 (1965); Campbell v. Department of Civil Serv., 39 N.J. 556, 562, 189 A.2d 712 (1963); see Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984) (agency interpretation of a specialized and complex area is entitled to great weight); City of Newark v. Natural Resource Council, 82 N.J. 530, 539, 414 A.2d 1304 (a strong presumption of reasonableness is accorded an agency in exercise of its statutorily-delegated responsibilities), cert. denied, 449 U.S. 983, 101 S.Ct. 400, 66 L.Ed.2d 245 (1980).
*102 Affirmed.[5]
NOTES
[1] The definition of health care service includes "care provided in or by a health care facility...." N.J.S.A. 26:2H-2b. A health care facility "means the facility or institution, whether public or private, engaged principally in providing services for ... treatment of human disease, pain, injury, deformity or physical condition...."
[2] These regulations defined a surgical facility as a "structure, office or suite of rooms [with] ... two or more operating rooms and one or more recovery rooms." N.J.A.C. 8:33A-2.2. The definition of "health care facility" implicitly includes a surgical facility.
[3] The amendment was enacted under the title, Health Care Cost Reduction Act, L. 1991, c. 187.
[4] As earlier noted, the DOH expected this process to take only two years. Subsequently, when the regulations expired, it is probable the DOH did not consider it necessary to adopt regulations immediately because of the moratorium on accepting any CON applications. In fact, the DOH did not resume accepting surgical facility applications until October 1993 when the current regulations went into effect.
[5] The DOH proposes to repeal N.J.A.C. 8:33S-1.1 to -1.7, but plans to readopt the provisions applicable in this case as new regulations to be incorporated in N.J.A.C. 8:33. See 27 N.J.R. 4182, 4188 (Nov. 6, 1995) (proposing new regulations as N.J.A.C. 8:33-1.3 and -6.1(d)). The adoption of the proposed regulations by the DOH will not affect this decision.