**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-0595-23
     A-0596-23

LORILLARD TOBACCO
COMPANY,

 Plaintiff-Appellant,

v.

DIRECTOR, DIVISION OF
TAXATION,

 Defendant-Respondent.

_____

Argued March 5, 2025 – Decided April 29, 2025

Before Judges Sabatino, Gummer, and Jablonski.

On appeal from the Tax Court of New Jersey, Docket Nos. 8305-2007 and 14043-2012.

Mitchell A. Newmark (Blank Rome, LLP) argued the cause for appellant (Eugene J. Gibilaro of the Florida and New York bars, admitted pro hac vice, and Mitchell A. Newmark, on the briefs).

Joseph A. Palumbo, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney

General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Joseph A. Palumbo, on the brief).

PER CURIAM

In these consolidated cases, plaintiff Lorillard Tobacco Company ("Lorillard") appeals the Tax Court's September 13, 2023 decision adjudicating its long-standing dispute with the New Jersey Division of Taxation concerning Lorillard's request for a refund for the years 1999 through 2004.

Lorillard contends the Tax Court erred with respect to its challenges to a regulation, N.J.A.C. 18:7-5.18(b)(3), which implements the Corporation Business Tax ("CBT") Act, N.J.S.A. 54:10A-1 to -41. The regulation was amended in 2020, apparently as the result of the present litigation. The Tax Court concluded that, although the pre-2020 version of the regulation violated the Dormant Commerce Clause of the United States Constitution, the 2020 amendment is a curative enactment that retroactively resolved the constitutional defect and applies to the tax years at issue.

We affirm, substantially for the sound reasons set forth in the written opinion of Presiding Tax Court Judge Mala Sundar. We amplify the judge's decision in our discussion that follows.

I.

The facts and lengthy procedural history are well known to the parties and detailed at length in previous opinions.[1] We incorporate by reference that background.

Succinctly stated, this dispute concerns royalties that Lorillard paid to an affiliated company, Lorillard Licensing Co. ("Licensing"), during the tax years at issue and whether those royalty payments were properly deducted in calculating Lorillard's liability to New Jersey for CBT taxes or instead should have been "added back" to Lorillard's taxable income.

Lorillard is incorporated in Delaware and based in North Carolina. During the years at issue, Lorillard manufactured, marketed, and distributed cigarettes wholesale throughout the United States, including in New Jersey. Lorillard had no offices, employees, nor bank accounts in this state. Lorillard Licensing Co. v. Dir., Div. of Tax'n (Licensing), 29 N.J. Tax 275, 277 (App. Div. 2015). In December 1999, Lorillard entered into an agreement with Licensing, a North

---

[1] See Lorillard Tobacco Co. v. Dir., Div. of Tax'n (Lorillard III), 33 N.J. Tax 43 (App. Div. 2021); Lorillard Tobacco Co. v. Dir., Div. of Tax'n (Lorillard II), 31 N.J. Tax 153 (Tax 2019); Lorillard Licensing Co., LLC v. Dir., Div. of Tax'n (Lorillard I), 28 N.J. Tax 590 (Tax 2014), aff'd, 29 N.J. Tax 275, 277-78 (App. Div. 2015). These case-numbering designations differ somewhat from those used by the trial court and in the parties' briefs.

A-0595-23

Carolina company with no physical presence in New Jersey. Lorillard paid

Licensing royalties for trademarks and other intellectual property. Lorillard III,

33 N.J. Tax at 48.

The Business Tax Reform Act and Its Treatment of Royalties

On July 2, 2002, the Legislature enacted the Business Tax Reform Act

("BTRA"), L. 2002, c. 40, which amended the CBT Act. A.H. Robins Co. v.

Dir., Div. of Tax'n, 365 N.J. Super. 472, 480-81 (App. Div. 2004). One of its

provisions at the time, the "add-back" statute, L. 2002, c. 40, § 5 (codified at

N.J.S.A. 54:10-4.4 but repealed effective July 3, 2023, by L. 2023, c. 96, § 14),

required Lorillard to add back to its income any royalty payments it had made

to a related member such as Licensing. Lorillard III, 33 N.J. Tax at 49. In

particular, the add-back statute provided:

> For purposes of computing its entire net income [ENI]
> under section 4 of P.L. 1945, c. 162 (C.54:10A-4), a
> taxpayer shall add back otherwise deductible interest
> expenses and costs and intangible expenses and costs
> directly or indirectly paid, accrued or incurred to, or in
> connection directly or indirectly with one or more
> direct or indirect transactions with, one or more related
> members.
>
> [N.J.S.A. 54:10A-4.4(b) (emphasis added).]

According to N.J.S.A. 54:10A-4.4(a)(3), royalties were deemed

"intangible expenses." However, a taxpayer was not required to add back

royalty payments if the taxpayer could establish that the add-back amount was "unreasonable" or if the taxpayer and the Division agreed to an alternative method of apportionment.  N.J.S.A. 54:10A-4.4(c).

Because New Jersey is a "separate entity" state, an affiliate that received royalties was also required to pay tax on that income.  To avoid double taxation in which the corporation and the affiliate would each pay tax on the same royalties, the Legislature provided that a taxpayer could claim an exception to the add-back statute on the ground that it was unreasonable (the "unreasonableness exception").  However, the Legislature did not define what was considered unreasonable.  Lorillard III, 33 N.J. Tax at 56; N.J.S.A. 54:10A-4.4(c).

The Key Regulation in this Case:  N.J.A.C. 18:7-5.18

The Division promulgated the regulation at the heart of this case, N.J.A.C. 18:7-5.18, to provide guidance to taxpayers as to what would qualify for the unreasonableness exception for both the payment of interest and the payment of royalties to a related entity.  A basis for claiming the unreasonableness exception specifically with respect to royalties was codified in N.J.A.C. 18:7-5.18(b)(3).  That provision instructed, before the regulation's 2020 amendment, that the Division should permit a taxpayer to take a deduction "[i]f the taxpayer

establishes that the adjustments are unreasonable <u>by showing the extent that the payee [the company that received the royalties] pays tax to New Jersey on the income stream.</u>"  (Emphasis added).

CBT Schedule G-2

When the Division adopted N.J.A.C. 18:7-5.18(b)(3), it also created CBT Schedule G-2.  35 N.J.R. 1573(a) (Apr. 7, 2003).  Schedule G-2 provided a formula to calculate the amount a taxpayer's royalty payment qualified for deductibility under the unreasonableness exception.  An "allocation factor" was calculated for both the payor of royalties and the payee, based on each corporation's in-state sales, payroll, and property.  <u>Morgan Stanley & Co. v. Dir., Div. of Tax'n</u>, 28 N.J. Tax 197, 211 (Tax 2014).  A formula applied to the allocation factors of the payor and the payee determined the amount to be deducted under the unreasonableness exception.

Schedule G-2 also noted the following separate avenue for relief regarding other exceptions that could not be claimed on that Schedule:

> <u>A separate Refund Claim</u> (Form A-3730) stipulating all the facts and providing all applicable evidence to support the taxpayer's claim, <u>must be submitted in order to request any other exception</u>.
>
> [(Emphasis added).]

A-0595-23

The Division's Interactions with Lorillard and Licensing

In September 2006, the Division assessed Licensing and determined that it owed $24,251,739 in unpaid CBT for the years 1999 through 2004. To arrive at this determination, the Division had included in the liability of Licensing the royalties that it received from Lorillard.

Licensing responded that it had no nexus with New Jersey and did not owe CBT. Licensing, 29 N.J. Tax at 276. Licensing also filed a complaint in the Tax Court in November 2006. In that case, we subsequently affirmed the Tax Court's decision that the Division had no right to royalties that Licensing had received for sales in other states. Id. at 280.

Meanwhile, in light of the Division's assessment of Licensing, in February 2007, Lorillard filed an amended CBT return seeking a refund in the amount of $4,297,701 for CBT attributable to royalties it had paid to Licensing from 2002 to 2005. Lorillard claimed refunds pursuant to the unreasonableness exception as follows: for 2002, $1.25 million; for 2003, $1.09 million; for 2004, $976,352; and for 2005, $982,664. The Division denied Lorillard's refund request.

Thereafter, in 2007 the complaint was filed in Lorillard I. Lorillard III, 33 N.J. Tax at 49. Among other things, Lorillard asserted it would be unfair to tax Licensing and Lorillard for the same royalties. According to Lorillard, in

2002, it had paid taxes in North Carolina and Iowa; in 2003, it paid income taxes in those states as well as Oklahoma and South Carolina; in 2004, Lorillard also paid income taxes in those four states, as well as Florida and Massachusetts. Licensing, 29 N.J. Tax at 278.

In 2009, Licensing filed CBT returns and paid CBT under the 2009 Amnesty Program for years 1999 through 2004. Lorillard III, 33 N.J. Tax at 49. Thereafter, in 2010, the Division issued a partial refund to Lorillard in the amount of $1,495,424, based on the amount of CBT paid by Licensing. Ibid. The Division paid a partial refund because Licensing's allocation factor was lower than Lorillard's for those years, resulting in a lesser CBT payment for Licensing than what Lorillard owed in CBT taxes.

The Morgan Stanley Decision

Meanwhile, in a separate case involving another taxpayer, the Tax Court in 2014 decided Morgan Stanley, 28 N.J. Tax at 216-21, and analyzed the meaning of the unreasonableness exception with respect to the interest add-back provision in N.J.S.A. 54:10A-4, as well as the legislative history of the BTRA. The court in Morgan Stanley found that the Director of the Division had abused his discretion in applying the unreasonableness exception with respect to adding back interest payments to a taxpayer's income. Id. at 225-26.

Turning back to the present matter involving Lorillard, in February 2019, the Tax Court held that Lorillard was entitled to the full amount of its refund claim for the years 2002-2005. However, the court did not reach Lorillard's argument that N.J.A.C. 18:7-5.18(b)(3) violated the Commerce Clause. Lorillard II, 31 N.J. Tax at 174. The Division appealed, and Lorillard cross-appealed.

In July 2019, the Tax Court ordered that Lorillard was entitled to its full refund request for the years 2007 through 2010. Again, the court did not address the question as to whether N.J.A.C. 18:7-5.18(b)(3) was unconstitutional. The Division appealed. Lorillard cross-appealed, again seeking a resolution of its constitutional arguments. The appeals were consolidated.

The 2020 Amendment of N.J.A.C. 18:7-5.18

While the appeals from the 2017 and 2019 Tax Court decisions were pending—and most significantly for the present appeal—the Division amended N.J.A.C. 18:7-5.18 in 2020. The amendment adopted nearly the exact language the Tax Court had used in Morgan Stanley. 52 N.J.R. 1025(a) (May 4, 2020).

The Division declared that the 2020 amendment pertained to both interest and royalty deductions and was enacted, in part, to comply with case law cited

A-0595-23

in <u>Morgan Stanley</u>.  52 N.J.R. 1991(a) (Nov. 2, 2020).  To that end, the 2020 amendment omitted the previous language in the regulation that had pertained to an "income stream" in New Jersey.  Instead, the revised regulation stated that an unreasonableness exception would be permitted:

> If the taxpayer establishes, to the satisfaction of the Director, that the adjustments are unreasonable by clear and convincing evidence, and any one of the following circumstances applies:
>
> i.  Unfair duplicate taxation;
>
> ii.  A technical failure to qualify the transactions under the statutory exceptions;
>
> iii.   An inability or impediment to meet the requirements due to legal or financial constraints;
>
> iv.  An unconstitutional result; or
>
> v.  The transaction is equivalent to an unrelated loan transaction . . . .
>
> [N.J.A.C. 18:7-5.18(b)(3).]

The 2020 amendment also contained illustrative examples of how the unreasonableness exception should be applied.  N.J.A.C. 18:7-5.18(d).

The amended regulation was thereafter replaced by more permanent regulations that mirrored the 2020 amendment and became effective in April 2021.  53 N.J.R. 544(a) (Apr. 5, 2021).  However, notwithstanding the 2020

A-0595-23

amendment, Part II, Exception 2 of Schedule G-2 was not amended and continued to limit the payor's deduction to the amount of CBT paid by the affiliated payee.

Our 2021 Remand to the Tax Court

On September 21, 2021, we reversed the Tax Court's decisions in part and remanded for that court to consider the constitutional question, in light of the 2020 amendment. Lorillard III, 33 N.J. Tax at 59.

After further briefing, the Tax Court issued on September 13, 2023 its remand determination. It ruled that N.J.A.C. 18:7-5.18(b)(3), as it existed prior to the 2020 amendment, violated the Dormant Commerce Clause in transgressing principles of "fair apportionment" and "external consistency." The court found the old regulation was flawed because it "did not permit a payor the option to show that there was out-of-state(s) multiple taxation of the royalties received by Licensing from [Lorillard] from New Jersey-based sales." The court held the old regulation violated the constitution by "denying [Lorillard] a deduction of the amount of royalties paid to Licensing without consideration of [whether] those same amounts were reported/taxed elsewhere."

The Tax Court found, however, that the 2020 amendment cured the constitutional problem. Therefore, the Tax Court held that the 2020 amendment

should be applied retroactively to Lorillard's refund requests, and it dismissed both of Lorillard's complaints.  Ibid.

II.

The present appeal by Lorillard ensued.[2]  The taxpayer essentially makes two arguments: (1) the Tax Court erred in failing to declare the pre-2020 regulation and Schedule G-2 "facially discriminatory"; and (2) the Tax Court erred in applying the 2020 amendment to N.J.A.C. 18:7-5.18 retroactively to the tax years in dispute.  We need not comment on the first argument, as we adopt the Tax Court's constitutional analysis.  We instead focus on the second argument contesting the Tax Court's retroactive application of the 2020 amendment.

We acknowledge that the retroactivity issue before us arises in a distinctive context.  Lorillard stresses that the adoption of the 2020 amendment recited an effective date of April 8, 2020, many years after the tax years at issue. Lorillard also stresses that when litigating the constitutional issues on remand in the Tax Court, the parties agreed that the 2020 amendments did not apply retroactively.  But, as the Tax Court explained, those points are not dispositive.

---

[2]  The Division has not cross-appealed.

Because the retroactivity issue involves a question of law, we review the Tax Court's ruling on that issue de novo. Waksal v. Dir., Div. of Tax'n, 215 N.J. 224, 231 (2013). Having undertaken such review, we adopt the Tax Court's ruling.

Generally speaking, new statutes and regulations are ordinarily applied prospectively for reasons of fairness. Metromedia, Inc. v. Dir., Div. of Tax'n, 97 N.J. 313, 329-34 (1984). However, there are three recognized exceptions to that general principle: (1) when the Legislature or administrative agency intended retroactivity of the new provision; (2) when the parties' expectations warrant retroactive application; (3) or when the new provision is "ameliorative or curative." State v. J.V., 242 N.J. 432, 444 (2020) (citing Gibbons v. Gibbons, 86 N.J 515, 522-23 (1981)). The Tax Court appropriately invoked that third exception.

Applying the curative exception in the context of a statutory amendment, the Supreme Court explained in James v. New Jersey Manufacturers Insurance Co., 216 N.J. 552, 564 (2014), as follows:

> A . . . provision also may be afforded retroactive application if it is "curative," that is, designed to "remedy a perceived imperfection in or misapplication of a statute." Schiavo v. John F. Kennedy Hosp., 258 N.J. Super. 380, 386 (App. Div. 1992), aff'd, 131 N.J. 400 (1993); see Cruz v. Cent. Jersey Landscaping, Inc.,

A-0595-23

195 N.J. 33, 46 (2008). "Generally, curative acts are made necessary by inadvertence or error in the original enactment of a statute or in its administration." 2 Sutherland, Statutory Construction, § 41.11, at 417 (5th ed. 1991). We have explained that an amendment is curative if it does "not alter the act in any substantial way, but merely clarifie[s] the legislative intent behind the [previous] act." 2nd Roc–Jersey Assocs. v. Town of Morristown, 158 N.J. 581, 605 (1999); accord Schiavo, 258 N.J. Super. at 386 (stating similarly that "the new statute [must be] intended simply to explain and to clarify the existing law rather than to change the meaning of the original law" (internal citations and quotation marks omitted)).

[James, 216 N.J. at 564 (citations reformatted).]

Lorillard asserts that the 2020 amendment to N.J.A.C. 18:7-5.18(b)(3) was not curative because, in its view, the amendment changed the law instead of clarifying it. The Division presently[3] argues the amendment was curative, inasmuch as it adopted the language of Morgan Stanley as to the correct method of determining an unreasonableness exception. Thus, the Division argues the amendment brought the regulation—as it pertained to royalties—into harmony with the legislative intent as to interest payments, as determined in Morgan Stanley.

---

[3] The Division is not estopped by the position it took in the Tax Court that the 2020 amendment applies prospectively. As the Tax Court correctly noted, the parties' positions are not dispositive on a question of law such as retroactivity.

The Tax Court reasoned that the 2020 amendment was aimed at clarifying how the unreasonableness exception should be applied, after Morgan Stanley had faulted the Division's previous application of the regulation as applied to interest payments. The Tax Court found, and we agree, that the 2020 amendment was curative because it eliminated the geographic limitation in the unreasonableness exception, thereby curing the double-taxation problem as to royalty payments.

The revised regulation clarified how the unreasonableness exception should be applied by the Division. The amendment sought to carry out the unreasonableness exception while avoiding an unconstitutional result, such as double taxation. Instead of retaining language tied to "income stream" in New Jersey, the amended regulation accomplished the same legislative objectives as the earlier version of the regulation, without violating the Commerce Clause. Simply stated, the 2020 amendment was curative because it cured a constitutional problem.

In Seashore Ambulatory Surgery Center, Inc. v. New Jersey Department of Health, 288 N.J. Super. 87, 97-99 (App. Div. 1996), we similarly recognized and applied the principle that retroactivity is acceptable when a regulation is ameliorative or curative. In Seashore, we held that a regulation requiring that a

certificate of need from the Department of Health must be obtained before a physician could maintain two operating rooms in his private practice was applicable, even though the current regulation applied to "new" facilities. Ibid. We rejected the notion that the phrase "new surgical facility" indicated that the Legislature intended the regulation to be applied purely prospectively, because the regulation manifestly was meant to be curative. Ibid.

The Tax Court appropriately relied upon In re Appeal by Progressive Casualty Insurance Co., 307 N.J. Super. 93, 101 (App. Div. 1997), in which we held that the history of a regulation supported its retroactive application as a "curative enactment." Here, as the Tax Court explained, the history stemming back to the Morgan Stanley case provided the curative rationale for the 2020 amendment. The revision aligned the treatment of royalty payments with interest payments to an affiliated company. The 2020 amendment was thereby intended "to remedy a perceived imperfection in or misapplication of a [regulation]." Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 388 (2016).

Lorillard argues the 2020 amendment cannot cure the regulation's unconstitutionality because the Division continues to use Schedule G-2, as it did before the amendment. Lorillard contends that, by utilizing Schedule G-2, the Division continues to permit only a deduction for Lorillard in the amount of

16

Licensing's allocation factor. Consequently, the Division allegedly is still applying the geographic limitation.

The Tax Court recognized that Schedule G-2 remained unchanged after the 2020 amendment. However, the Division offered taxpayers an opportunity to seek additional deductions, albeit as a separate refund claim on a separate form. The Tax Court recognized that, although using a separate form was administratively tedious, Lorillard nonetheless could seek more deductions beyond the Schedule G-2 calculations. In this regard, the court astutely observed:

> Of course, this also means that Part II of Schedule G-2 cannot be the be-all and end-all of the partially deductible amount. Rather, it is, and should be a starting point with [Lorillard] having the opportunity to show more in terms of tax actually paid by Licensing in other jurisdictions on the royalties received from [Lorillard] on [Lorillard's] sales of tobacco products in New Jersey.
>
> [(Emphasis added).]

We agree. Schedule G-2 invites the taxpayer to submit a different form (Form A-3730) to request other deductions. The fact that the Division still uses Schedule G-2 does not undermine the curative nature of the 2020 amendment. Also, the Division points out that while Lorillard has been invited to show the

17

amount of taxes that Licensing paid in other United States jurisdictions, it has not yet done so.

Lastly, Lorillard argues that it is entitled to a full refund of CBT taxes for the years in question because the Tax Court found the pre-2020 version of the regulation unconstitutional. The Tax Court reasonably rejected that all-or-nothing claim for relief. Instead, supported by the 2020 curative amendment, the court engaged in a form of "judicial surgery" to preserve the regulatory scheme while, at the same time, acknowledging Lorillard's ability to receive a partial offset of its tax liabilities based on the amounts that were paid to other jurisdictions. As we have previously noted:

> Pursuant to N.J.S.A. 1:1-10, a court has the power to declare a portion of a statute unconstitutional, while leaving the remainder of the law intact. "In appropriate cases, a court has the power to engage in 'judicial surgery,' or the narrow construction of a statute, to free it from constitutional doubt or defect." N.J. State Chamber of Com. v. N.J. Election L. Enf't Comm'n, 82 N.J. 57, 75 (1980).
>
> [L. Feriozzo Concrete Co. v. Casino Reinvestment Dev. Auth., 342 N.J. Super. 237, 251 (App. Div. 2001) (citations reformatted).]

These principles apply to regulations as well as statutes. Ibid.

Thus, even if N.J.A.C. 18:7-5.18 had not been amended by the Division in 2020, our courts would have been authorized to delete the unconstitutional

language within the regulation and narrow the construction of the regulation so as "to free it from constitutional doubt or defect." Ibid. In this way, the Tax Court could have applied the regulation to Lorillard even without the 2020 amendment. The regulation should have been upheld to the fullest extent possible. The 2020 amendment provided a cure to the constitutional problem, granting Lorillard a measure of partial relief—without entitling it indiscriminately to an excessive refund beyond proven instances of double taxation by other taxing jurisdictions.

In sum, the Tax Court issued a fair and well-reasoned decision that comports with the law and overarching principles of appellate review. To the extent that we have not addressed them explicitly, the remaining points and sub-points made by Lorillard lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0595-23