MENYUK, J.T.C.
This action contests a Corporation Business Tax deficiency assessment and comes before the court on cross-motions for summary judgment. At issue is whether defendant Director, Division of Taxation, properly disallowed a deduction from entire net income for dividends received by plaintiff from its wholly owned subsidiary. The sole reason for the disallowance was that the subsidiary was a real estate investment trust (“REIT”). The issues in this case are wholly matters of law, and there are no facts in dispute. The matter is therefore ripe for summary judgment. R. 4:46-2(e).
UNB Investment Company (“UNB”) is a New Jersey corporation and is itself a subsidiary of United National Bancorp. For the tax year in issue, 1997, UNB owned all of the issued and outstanding stock of Bridgewater Mortgage Company, Inc. (“Bridgewater”). For tax year 1997, Bridgewater qualified as a REIT under federal income tax law and under the New Jersey Corporation Business Tax Act, N.J.S.A. 54:10A-1 to — 41 (“CBT Act”). See N.J.S.A. 54:10A-4(1), defining real estate investment trust as “any corporation, trust or association qualifying and electing to be taxed as a real estate investment trust under federal law.” See also, I.R.C. § 856 (defining a real estate investment trust).
In 1997, Bridgewater distributed to UNB a dividend in the amount of $11,730,709, and properly deducted the dividend payment in computing taxable income on its 1997 CBT return. See Corporate Property Investors v. Director, Div. of Taxation, 15 N.J. Tax 14 (Tax 1994), aff'd, 15 N.J. Tax 205 (App.Div.1995), holding that a REIT is permitted the same “dividends paid” deduction in computing entire net income under the CBT Act as is *359 permitted in computing its federal income tax liability. See I.R.C. § 857(b)(2)(B).
The dividend paid by Bridgewater to UNB was reported on the 1997 consolidated federal tax return for United National Bancorp and subsidiaries (including UNB, but not Bridgewater[1]), and was included in taxable income. UNB also reported the dividend payment on its New Jersey CBT return, but excluded the dividend from its entire net income pursuant to N.J.S.A. 54:10A-4(k)(5) (“Section 4(k)(5)”), which provides that a corporate taxpayer may exclude from its entire net income 100% of the dividends paid by subsidiaries in which it owns at least an 80% interest. For federal income tax purposes, corporations are generally permitted a “dividends received” deduction in computing their federal taxable income, I.R.C. § 243(a), but are specifically denied such a deduction for dividends received from REITs. I.R.C. § 857(c)(1).
In a “Notice of Assessment Related to Final Audit Determination” dated January 31, 2002, the defendant Director, Division of Taxation (the “Director”), disallowed the exclusion from UNB’s entire net income for the dividend paid to UNB by Bridgewater, for the reason that the disallowance was “consistent with the federal treatment of dividends received from REITs,” and assessed additional tax in the amount of $263,941 plus interest. UNB timely protested the assessment to the Director, and, by letter dated May 1, 2003, the Director issued a final determination affirming the assessment, explaining that:
New Jersey courts recognize and mandate that IRC section 857(b) distributions be allowed prior to the calculation of taxable income [of a REIT]. It is my determination that IRC section 857(e) must also be recognized, and the distribution considered as ordinary income by the recipient, and not treated as a dividend eligible [for] the dividend exclusion under the CBT Act.
The complaint in this action followed.
UNB now moves for summary judgment reversing the Director’s determination on the ground that Section 4(k)(5) plainly *360 provides for the exclusion of the dividend income in question. See also, N.J.A.C. 18:7-5.2(a)(2)(i), which, in instructing how entire net income should be computed, directs the deduction of 100 percent of dividends paid by subsidiaries which are owned to the extent of at least eighty percent. UNB charges that, in contravention of the express language of Section 4(k)(5), the Director has erroneously engrafted onto the CBT that provision of the Internal Revenue Code, I.R.C. § 857(c)(1), which disallows the deduction by the corporate parent of REIT dividends paid to it. UNB further argues that even if the CBT Act were to be construed as the Director has contended it'should be in this case, the deficiency assessment in issue must be voided because the Director has failed to promulgate an appropriate regulation pursuant to the Administrative Procedure Act, N.J.S.A. 52:14B-1 to -15 (the “APA”).
The Director responds that his disallowance of the deduction for dividends received by UNB from Bridgewater should be upheld as a logical consequence of the decision in Corporate Property Investors, supra, 15 N.J. Tax at 21, because the deduction by Bridge-water of its dividend payment to UNB and the subsequent deduction by UNB of the dividend received by it from Bridgewater permit the dividend to escape taxation entirely, and do not further the purpose of the “dividends received” deduction contained in Section 4(k)(5). That purpose is to avoid the double taxation of corporate income. The Director additionally contends that he was not required to promulgate a regulation providing for the disallowance of the dividends received deduction by a corporate parent of a REIT subsidiary before making his assessment, because his construction of the CBT Act follows the result and logic of Corporate Property Investors, supra, 15 N.J. Tax at 18-21. The Director also maintains that he has sufficient authority pursuant to N.J.S.A. 54:10A-10 to correct the distortion in income resulting from the avoidance of tax on the income when it was received by Bridgewater and again when it was paid out by Bridgewater as a dividend to UNB.
For the following reasons, I conclude that the Director’s construction of the CBT Act in this case was reasonable and was made with sufficient statutory authority, but that the assessment *361 in issue must be voided for failure to promulgate an appropriate regulation pursuant to the APA.
In general terms, a REIT receives most of its income from passive real estate-related investments, and for federal income tax purposes is a “pass-through” or conduit entity with respect to income distributed to its shareowners, who are taxed on the distributed income, while there is no tax on the REIT entity itself. Corporate Property Investors, supra, 15 N.J. Tax at 207. “ ‘The conduit effect, taxed at the shareholder level rather than the corporate level, is achieved through the mechanism of the dividends paid deduction.’ ” Id. at 208, quoting 10 J. Mertens, Law of Federal Income Taxation § 41A.42 at 84-85 (1988).
Whether a REIT is permitted the same dividends paid deduction under the CBT Act as is permitted under federal law was the issue decided in Corporate Property Investors, supra, 15 N.J. Tax at 15. The CBT Act deems “entire net income” to be prima facie equal in amount to federal taxable income, before net operating loss deduction and special deductions. N.J.S.A. 54:10A-4(k). The Tax Court rejected the Director’s contention that the dividends paid deduction was a special deduction and thus, must be added back to federal taxable income in determining entire net income under the CBT Act. Corporate Property Investors, supra, 15 N.J. Tax at 18-19. The court further rejected the Director’s attempt to distinguish between “federal taxable income,” as defined by I.R.C. § 63(a), which the Director asserted was to be calculated without the deduction for dividends paid, and “real estate investment trust income,” as defined by I.R.C. § 857(b)(2), which explicitly provides for the dividends paid deduction. 15 N.J. Tax at 19-20. In affirming, the Appellate Division observed that it could not “ascertain any indication in the CBT that the Legislature intended to penalize REITs or to discourage them from operating in this state. The basic attraction of a REIT is the pass-though of gains and losses to the shareowners to have them pay the appropriate taxes.” Corporate Property Investors v. Director, Div. of Taxation, supra, 15 N.J. Tax at 207.
*362 UNB emphasizes that dividend income is reported at line 4 of the federal return and is included in taxable income before net operating losses and special deductions at line 28 of the federal return. Dividends are thus referred to as an “above-the-line [28]” item of income. The New Jersey CBT return similarly requires CBT taxpayers to report dividend income separately at line 4. That income is included in federal taxable income which the taxpayer reports at line 28 of the CBT return before net operating loss and special deductions are taken. The dividend income in issue here is, thus, also “above-the-line” income for New Jersey purposes. The various adjustments to federal entire net income required by the CBT Act, including the dividend exclusion provided by Section 4(k)(5), are reported below line 28. It is UNB’s position that unless there is a specific provision in the CBT Act providing for a below the line New Jersey adjustment to entire net income which would add back to entire net income dividends paid by REITs, the plain language of Section 4(k)(5) must prevail.
The legislative history and purpose of the dividend exclusion were thoroughly reviewed in International Flavors & Fragrances, Inc. v. Director, Division of Taxation, 102 N.J. 210, 215-17, 507 A.2d 700 (1986), aff'g 7 N.J. Tax 652 (App.Div.1984), aff'g 5 N.J. Tax 617 (Tax 1983). The Court concluded that the purpose of the 1968 amendments to the CBT Act, L. 1968, c. 250, which adopted the dividend exclusion currently codified at Section 4(k)(5), was to “provide relief from the potential double taxation that inheres in the taxation of corporate dividends received from a corporate subsidiary.” 102 N.J. at 215, 507 A.2d 700. The primary reason for such relief was to encourage corporations to locate in New Jersey, thereby making New Jersey competitive with other states. Id. at 216-17, 507 A.2d 700.
Quoting the opinion of the Tax Court in International Flavors & Fragrances, supra, that was ultimately affirmed by the New Jersey Supreme Court, UNB maintains that the dividends paid deduction must be allowed here because federal income tax concepts do not control with respect to the deductions from entire net income, such as that provided by Section 4(k)(5):
*363 While the starting point for determination of entire net income under the act is taxable income, before net operating loss deduction and special deductions, which the taxpayer is required to report for Federal income tax purposes, the Corporation Business Tax deviates from the federal tax by providing its own inclusions and exclusions from the tax base. N.J.S.A. 54:10A-4(k). Only at the initial point is it indicated that the Legislature intended that federal standards were to be controlling.
[International Flavors & Fragrances, Inc. v. Director, Div. of Taxation, supra, 5 N.J. Tax at 624].
In International Flavors & Fragrances, Inc., the Tax Court rejected the contention that it should adopt and incorporate certain federal tax concepts, particularly that of an “affiliated group,” in determining whether the taxpayer satisfied the eighty percent ownership requirement of Section 4(k)(5). Judge Andrew concluded that there was “no support for the proposition that federal income taxation concepts are the definitional source of the terms utilized in the New Jersey [CBT] act.” 5 N.J. Tax at 624.
It is axiomatic that, in construing a statute, one must first consider its plain language, which should be read according to its ordinary or general meaning, so long as that reading comports with the statute’s legislative intent. Koch v. Director, Div. of Taxation, 157 N.J. 1, 7, 722 A.2d 918 (1999). If the statutory language is unambiguous on its face, a court should not go beyond that language to determine the Legislature’s intent. Ibid. A court must look, however, to the provisions of the whole law, and to its object and policy, in searching for a true understanding and proper application of a statute, and must read the language of the statute “perceptively and sensibly with a view toward fulfilling the Legislature’s intent.” Stephen Little Trucking & Stephen Little v. Director, Div. of Taxation, 19 N.J. Tax 461, 465 (Tax 2001), quoting Cumberland Arms Assocs. v. Burlington Tp., 10 N.J. Tax 255, 268 (Tax 1988). See also, Koch v. Director, supra, 157 N.J. at 7, 722 A.2d 918 (a legislative provision should not be read in a way which sacrifices the statutory scheme but is to be interpreted in an integrated way without undue emphasis on any particular word or phrase and, if possible, in a manner which harmonizes all of the statutory parts so as to do justice to its overall meaning).
REITs were first singled out for favorable tax treatment under the CBT Act by L. 1972, c. 89, which amended N.J.S.A. 54:10A-4 *364 to add paragraph (1) (“Section 4(1)”), defining a real estate investment trust as “any unincorporated trust or unincorporated association qualifying and electing to be taxed as a real estate investment trust under Federal law.” At the same time, N.J.S.A. 54:10A-5(d) was amended to place REITs on the same tax footing as regulated investment companies by providing that the tax on a REIT was to be based on 4% of its entire net income.[2] The purpose of the amendments was set forth in the introductory statement to A. 499 (subsequently enacted as L. 1972, c. 89), which provided, in relevant part, as follows:
A real estate investment trust is an organization specializing in investments in real estate and real estate mortgages. It is directly comparable to a x-egulated investment company, which specializes in investments in stocks and securities. Under Federal law, regulated investment companies and real estate investment trusts which distribute 90% or more of their ordinary income are taxed only on their retained earnings. Thus, the distributed earnings of these trusts and companies are taxed only to the shareholders.
Under present New Jersey law, regulated investment companies ai’e given preferential tax treatment. The New Jersey Commission on State Tax Policy in its Second Report, at pages 102-3 (March 24, 1947), stated that the special tax treatment afforded regulated investment companies in New Jei’sey “was made on the meritorious ground that the particular type of company involved provided an investment medium for the small investor and was subject to public supervision, as distinguished from other investment companies.” The same statement can be made in support of similar tax ti'eatment for real estate investment trusts. Thus, under the bill real estate investment trusts will be placed on the same basis as regulated investment companies for tax pux-poses in New Jersey.
[Introductory Statement, A. 499 (1972) ].
The treatment of REITs under the CBT Act does not precisely duplicate their federal treatment as conduit entities. There is also an entity level tax calculated on the basis of 4% of a REIT’s entire net income. N.J.S.A. 54:10A-5(d). In the absence of the preference, a REIT would be taxed on its entire net income. N.J.S.A. 54:10A-5(c). As further explained in the introductory statement to A. 499:
In the past, almost all real estate investment trusts have been organized in Massachusetts and, since Massachusetts imposes no tax, they also maintain their principal place of business in Massachusetts. In 1971, New York took steps to *365 attract real estate investment trusts to New York by amending its tax law so as to tax these trusts in the same manner as under the Federal system. The bill will impose a tax upon ... net income, but because of the rate differential it is believed that under the bill New Jersey will now be placed on a competitive basis with New York in attracting real estate investment trust business to New Jersey.
[Introductory Statement, A. 499 (1972) ].
It appears then, that the New Jersey Legislature had two purposes in providing favorable tax treatment to REITs under the CBT Act: first, to encourage the development of an investment vehicle for the small investor; and second, to provide a tax atmosphere competitive with that of other states as an incentive for REITs to locate in New Jersey.
The ability of New Jersey to compete with other states in inducing REITs to locate here was a continuing concern. In 1989, the Legislature enacted S. 2256, amending the definition of real estate investment trust contained in Section 4(1) to permit REITs to operate in corporate form. L. 1989, c. 59.
With this change in definition, real estate investment trusts which are incorporated will be taxed in the same manner under the Corporation Business Tax Act as real estate investment trusts formed as trusts or associations____
It appears that real estate investment trusts formed as corporations have not been established in New Jersey because of its current tax laws.
REITS have been authorized under federal law to operate as corporations (as an alternative to operating as trusts or associations) since 1976, when a provision of the Internal Revenue Code, set out in 26 U.S.C. § 856, was amended to allow this change. After the federal statute was amended, many states, including New York, California and Florida, followed suit, amending their state tax laws to allow corporate REITs in their state to operate on the same basis as REITs formed as trusts or associations.
[Senate Labor, Industry and Professions Committee Statement to S. 2256 (1988), subsequently enacted as L. 1989, c. 59].
Federal income tax law is unquestionably the definitional source of the term REIT as used in the CBT Act, which Section 4(1) defines as an entity qualifying and electing to be taxed as a real estate investment trust under federal law. As originally enacted in 1960,1.R.C. § 856 defined a REIT as “an unincorporated trust or an unincorporated association”:
(1) which is managed by one or more trustees;
(2) the beneficial ownership of which is evidenced by transferable shares or by transferable certificates of beneficial interest;
*366 (3) which (but for the provisions of this part) would be taxable as a domestic corporation;
(4) which does not hold any property primarily for sale to customers in the ordinary course of its trade or business;
(5) the beneficial ownership of which is held by 100 or more persons;
(6) which would not be a personal holding company (as defined in section 542) if all of its gross income constituted personal holding company income (as defined in section 543); and
(7) [which meets certain requirements for election to be treated as a REIT, and whose income is restricted to income primarily from real estate and related investments].
[Pub.L. 86-779, § 10(a), 74 Stat. 1004 (1960) ].
From the outset, the federal REIT legislation provided for the disallowance of the corporate dividends received deduction for dividends received from REITs. Pub.L. 86-779, § 10(a), 74 Stat. 1004, 1008 (1960).
The federal tax provisions pertaining to REITs were substantially the same when the New Jersey Legislature passed the original REIT legislation, L. 1972, c. 89. Consequently, I am not convinced that the language of Section 4(k)(5) regarding the deduction of dividends received is unambiguous on its face when read in conjunction and as integrated with Section 4(1). See Koch v. Director, Div. of Taxation, supra, 157 N.J. at 7, 722 A.2d 918. As implicitly recognized in Corporate Property Investors, supra, by both the Tax Court, 15 N.J. Tax at 18-20, and the Appellate Division, 15 N.J. Tax at 208-09, Section 4(1) implicates not only I.R.C. § 856, pertaining to the qualifications for federal conduit treatment, but also I.R.C. § 857, setting forth how REITs are to be taxed.
The furtherance of legislative purpose is the key to the interpretation of any statute. G.E. Solid State, Inc. v. Director, Div. of Taxation, 132 N.J. 298, 308, 625 A.2d 468 (1993). The issue then becomes whether incorporation into the CBT Act of the federal provision disallowing the dividends received deduction by corporate shareowners furthers the legislative purpose of the CBT Act generally, and of Sections 4(1) and 4(k)(5) in particular.
In broad terms, of course, the principal purpose of the CBT Act is to raise revenue. In construing taxing statutes, ambiguities in a tax preference, such as the favorable tax treatment available *367 to REITs, are strictly construed against the taxpayer. Chemical New Jersey Holdings, Inc. v. Director, Div. of Taxation, 20 N.J. Tax 547, 560 (Tax 2003); see also, Body-Rite Repair Co. v. Director, Div. of Taxation, 89 N.J. 540, 544, 446 A.2d 515 (1982) (construing an exemption contained in the Sales and Use Tax Act, N.J.S.A. 54:32B-1 to — 29).
The legislative history conveys the general impression that, except for the entity level tax on REIT income, the Legislature had nothing more or less in mind than the wholesale adoption of federal tax treatment of REITs. The introductory statement to the bill which, as enacted, first recognized REITs, set forth the perception of New York’s 1971 REIT legislation as taxing REITs “in the same manner as under the federal system.” Introductory Statement, A. 499 (1972). The statement continued by recognizing that New York did not have an entity level tax as proposed in New Jersey, but expressed the hope that New Jersey would be competitive with New York in attracting REIT business, because of the rate differential between the two states. Ibid.
The legislative history gives no indication that the Legislature specifically considered the issue raised here or that it ever contemplated that REITs could be the subsidiaries of corporations and that dividend payments might be deductible from the entire net income of corporate taxpayers pursuant to Section 4(k)(5). The legislative history does plainly establish that REITs were intended as vehicles for small investors and not, as here, a second tier subsidiary of a bank holding company.
The New Jersey Legislature’s concept of a REIT as small investor vehicle appears to have been derived from the federal statute defining a REIT, which explicitly provides that “the beneficial ownership of [a REIT must be] held by 100 or more persons.” I.R.C. § 856(a)(5). See also, Treas. Reg. 1.856-1(d)(2), which provides, in relevant part, “Beneficial ownership shall be evidenced by transferable shares, or by transferable certificates of beneficial interest, and ... must be held by 100 or more persons, determined without reference to any rules of attribution.”
The term “person” is not expressly defined in I.R.C. § 856, which, at subsection (c)(5)(F), provides that all terms not defined *368 by I.R.C. § 856 “shall have the same meaning as when used in the Investment Company Act of 1940, as amended (15 U.S.C. 80a-1 and following).” I.R.C. § 856(c)(5)(F). Section 2(a)(28) of the Investment Company Act provides that “person” means a natural person or company, 15 U.S.C.A. § 80a-2(a)(28), and Section 2(a)(8) of the same act provides that “company” means, among other things, a corporation. 15 U.S.C.A. § 80a-2(a)(8).
Accordingly, while it was possible in 1972 for beneficial interests in a REIT to be owned by a corporation to which Section 4(k)(5) was applicable, that possibility was not readily apparent on the face of I.R.C. § 856. Consequently, the Legislature may have not provided an express exception to Section 4(k)(5) for dividends paid by REITs because the Legislature never considered that Section 4(k)(5), a dividend exclusion for which only corporate taxpayers were eligible, would be applicable to a “person” receiving dividends from a REIT.
Notably, the original New Jersey REIT legislation, L. 1972, c. 89, was enacted well before the 1986 amendment to I.R.C. § 856 adding subsection (h), which provides, among other things, that a REIT need not meet the 100 person ownership requirement in the first taxable year for which election as a REIT is made. Moreover, although the legislative history accompanying the 1989 amendment to the CBT Act (permitting REITs to be organized in corporate form), specifically mentioned the 1976 amendment to federal law allowing REITs to be formed as corporations, that same legislative history was silent with respect to the 1986 federal amendment adding I.R.C. § 856(h). Senate Labor, Industry and Professions Committee Statement to S. 2256 (1988), subsequently enacted as L. 1989, c. 59. I conclude that it is highly unlikely that the Legislature ever recognized or considered the consequences to its own CBT Act of a federal tax law provision that permits one corporation to own the entire beneficial interest in a REIT. That is, of course, what occurred in tax year 1997 when UNB owned all the Bridgewater shares.[3]
*369 Another possibility is that the Legislature intended to adopt federal tax treatment of REITs without extensive investigation or discussion of that treatment, simply because that was what the Legislature believed New York had done. The second goal of the Legislature in recognizing REITs was making New Jersey competitive with other states, particularly New York, as a place for REITs to do business. New York currently permits a “dividends received” deduction comparable to that provided by Section 4(k)(5), without any exception for dividends paid by REITs. N.Y. Tax Law § 208(9)(a).[4]
Previously, however, New York and New Jersey seem to have treated “dividends paid” and “dividends received” in a similar fashion: that is, prohibiting REITs from deducting “dividends paid” from their entire net incomes, but permitting corporations to deduct “dividends received” from a REIT. See Dreyfus Special Income Fund, Inc. v. New York State Tax Comm’n, 134 Misc.2d 679, 513 N.Y.S.2d 571 (N.Y.Sup.Ct.1986), aff'd, 126 A.D.2d 368, 514 N.Y.S.2d 130 (1987), aff'd, 72 N.Y.2d 874, 532 N.Y.S.2d 356, 528 N.E.2d 509 (1988), invalidating a regulation denying a “dividends paid” deduction to a regulated investment company based on reasoning substantially similar to that employed in Corporate Property Investors, supra, by the Tax Court and the Appellate Division, both of which cited Dreyfus Special Income Fund. Corporate Property Investors, supra, 15 N.J. Tax at 20-21, 15 N.J. Tax at 208. Although the complexities of both states’ tax laws make it difficult to compare the tax consequences directly, disallowance by New Jersey of the dividends received deduction as a consequence of 1995 decision of the Appellate Division in Corpo *370 rate Property Investors would seem to create a possible disincentive for REITs to do business in this state, as compared with New York, contrary to the intent of the Legislature in enacting the original REIT provisions in 1972 and amending them in 1989.
Disallowance of the dividends received deduction would, however, be consistent with the purpose of Section 4(k)(5), which is to “provide relief from the potential double taxation that inheres in the taxation of corporate dividends received from a major subsidiary.” International Flavors & Fragrances, supra, 102 N.J. at 215, 507 A.2d 700. Because a REIT is not taxed on the bulk of its income as a consequence of the dividends paid deduction, REIT income is passed through without tax to the REIT owners. The Director maintains that, unless the corporate deduction for dividends received from a REIT is disallowed, REIT income distributed as dividends would avoid taxation entirely, because the REITs themselves are permitted a dividends paid deduction under Corporate Property Investors, supra.
UNB points out that the dividend exclusion applies only to corporate owners of interests in REITs, that individual owners would be taxed on REIT dividends, and that, even here, the individual shareowners at the end of UNB’s corporate chain would be taxed on the REIT income to the extent it was eventually passed through to those shareowners as dividends. That reasoning is somewhat disingenuous, because New Jersey plainly has the power to tax UNB but might not have taxing jurisdiction with respect to the individual shareowners at the end of UNB’s corporate chain. See, e.g., N.J.S.A. 54A:5-8, setting forth the New Jersey sources of nonresident income which are subject to New Jersey’s gross income tax.
The Director also oversimplifies. The intent of the dividend exclusion was not only to prevent the double taxation of corporate income, but also to encourage corporations to locate in New Jersey. International Flavors & Fragrances, Inc. v. Director, Div. of Taxation, supra, 102 N.J. at 215-17, 507 A.2d 700. In other words, an impetus for both Section 4(k)(5) and 4(1) was to make New Jersey’s tax policies competitive with that of other *371 states in order to encourage economic development. In the case of REITs, the Legislature seems to have been mainly, although not exclusively, concerned with New York. Even if New York’s current tax law permits the exclusion of dividends paid by REITs from the income of corporate shareholders, the New Jersey Legislature never intended to precisely duplicate New York’s treatment of REITs. This is demonstrated by the Legislature’s determination to impose an entity level tax on REITs, notwithstanding its recognition that New York did not impose such a tax. Introductory Statement, A. 499 (1972). As already noted, the legislative history indicates a belief that New York had adopted federal tax treatment of REITs, ibid., which prohibits the exclusion of REIT dividends from corporate income. I.R.C. § 857(c)(1). Moreover, other states currently deny the dividends received deduction for dividends received from REITs. See, e.g., Conn. Gen.Stat. § 12-217(a)(3); Mass. Gen. Laws ch. 63, § 30, para. 4. The Director’s determination here, then, does not result in the double taxation of dividends, and is consistent with the legislative intent to maintain New Jersey’s competitive position in attracting REITs to locate here.
UNB asks this court to find that a legislative failure to enact proposed legislation specifically reversing the result in Corporate Property Investors, supra, 15 N.J. Tax 14, and eliminating the dividend exclusion entirely, evidences that the Legislature was aware of and considered the issue raised by this case, and nevertheless declined to act. The proposed legislation in question, S. 1556, as introduced on May 30, 2002, and A. 2501, as introduced on June 6, 2002, contained numerous revisions to the CBT Act, some of which were eventually enacted as part of L. 2002, c. 40, and some of which were not. The legislation was intended to raise revenues. See, Assembly Budget Committee Statement to A. 2501 (June 27, 2002), reviewing “loophole closers,” and outright “revenue measures” contained in the bill.
As originally introduced, S. 1556 and A. 2501 would have repealed the dividend exclusion, Section 4(k)(5), in its entirety. Ultimately, the Legislature modified Section 4(k)(5) by eliminating the exclusion for corporations owning less than 50% of the corpo *372 rate dividend payor. This narrowing of the availability of the dividend exclusion, if relevant at all to this case, indicates an increasing legislative concern with revenue and a lesser concern with remaining competitive with other states.
The Legislature also failed to enact a proposed amendment to Section 4(k)(2) which would have required that a REIT’s entire net income be determined without the exclusion of the dividends paid deduction. Nothing in the legislative history indicates why the proposal was ultimately rejected. As UNB concedes, legislative inaction is “a weak reed upon which to lean.” Amerada Hess Corp. v. Director, Div. of Taxation, 107 N.J. 307, 322, 526 A.2d 1029 (1987), aff'd, 490 U.S. 66, 109 S.Ct. 1617, 104 L.Ed.2d 58 (1989). The most that can be inferred is that the Legislature declined to overrule Corporate Property Investors. The inaction says nothing about whether the Legislature considered or was aware of the position taken by the Director here with respect to the deductibility of dividends received from REITs.
I conclude that the Director’s disallowance of the exclusion from UNB’s entire net income of the dividends paid by Bridgewater was consistent with the legislative intent to promote REITs as a vehicle for small investors and to make New Jersey competitive with other states in attracting REITs to do business here. The Director’s application of the CBT Act in this case harmonizes Sections 4(k)(5) and 4(1), and is consistent with the statutory scheme read as a whole.
The Director is granted broad authority to “prescribe and issue such rules and regulations, not inconsistent [with the CBT Act] for the interpretation and application of the provisions of this act, as he may deem necessary.” N.J.S.A. 54:10A-27. If, as a matter of original construction of Section 4(1), or following the decision in Corporate Property Investors, supra, 15 N.J. Tax 14, the Director had promulgated a regulation incorporating the federal tax treatment of REITs, that is, permitting the dividends paid deduction and disallowing the dividends received deduction, his action would have been.presumptively reasonable. The authority granted to an administrative agency is liberally construed *373 so that the agency can accomplish its statutory responsibilities, and “courts should readily imply such incidental powers as are necessary to effectuate fully the legislative intent.” New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562, 384 A.2d 795 (1978). Even in the absence of express statutory authorization, an administrative agency is not precluded from taking an action where, by reasonable implication, that action can be said to promote or advance the policies and findings that served as the driving force for the enactment of the legislation. A.A. Mastrangelo, Inc. v. Commissioner of Dept. of Envtl. Prot., 90 N.J. 666, 683-84, 449 A.2d 516 (1982); New Jersey Guild of Hearing Aid Dispensers v. Long, supra, 75 N.J. at 562, 384 A.2d 795.
The assessment in issue cannot be upheld, however, because no regulation was ever promulgated. If an action of an administrative agency amounts to a “rule” under the APA, it must formally promulgate that rule as required by the APA, even when the action of the agency is reasonable and supported by the statutory language. Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 337-38, 478 A.2d 742 (1984). The Court in Metromedia enumerated six factors “all or most of’ which, when present, weigh in favor of a conclusion that the agency should engage in the rule-making process. Id. at 331, 478 A.2d 742. Rule-making is indicated when the administrative determination: (1) is intended to have coverage encompassing a large segment of the regulated or general public; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate prospectively; (4) prescribes a directive that is not obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that was not previously expressed in any official and explicit agency pronouncement or if the policy constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision in the nature of the interpretation of law or general policy. Id. at 331-32, 478 A.2d 742.
The determination by the Director, disallowing the exclusion for dividends received by UNB from Bridgewater, has virtually all of the indicia of a rule. On its face, it is intended to apply to all *374 corporations subject to the CBT Act which own shares in REITs. For the tax year in issue, corporations owning less than eighty percent of the ownership of investment in a subsidiary were permitted to deduct fifty percent of other dividends received. Accordingly, the determination made by the Director in this case would have been applicable to any corporation owning a beneficial interest in a. REIT.[5] While it is unknown exactly how many corporate taxpayers own such shares, the rationale applied by the Director here* — that such corporate taxpayers are wholly avoiding a corporate tax on REIT dividends — is applicable to every such taxpayer.
The determination is intended to operate prospectively with respect to tax years following the decision in Corporate Property Investors, supra. Obviously, some tax years are now beyond the statutory period within which the Director may make assessments, N.J.S.A. 54:49-6b, but the rationale of the assessment against UNB indicates an intent to apply the rule prospectively.
The determination is not obviously inferable from the enabling statutory authorization. It is the very ambiguity of the language that required the examination of legislative intent undertaken here. Even the Director does not argue that his determination is derived directly from statutory language: his principal contention is that the determination is inferable from Corporate Property Investors. It therefore follows that the determination constitutes a material and significant change from the Director’s policy prior to that decision, and has never been the subject of an official and explicit agency pronouncement. Indeed, the policy applied here conflicts with N.J.A.C. 18:7-5.2(a)(2), the Director’s regulation regarding the dividend exclusion.
*375 Finally, the assessment in issue reflects a decision in the nature of the interpretation of law or general policy. That is, the Director has determined to construe the CBT Act as treating dividends received from a REIT in a manner consistent with federal tax law.
I therefore conclude that the determination challenged here— that dividends received from REITs should be disallowed notwithstanding Section 4(k)(5) — amounts to a rule that must be formally promulgated. Even though the Director has the authority to construe the statute as he has done in this case, it is unfair to penalize taxpayers through ad hoc adjudication under the facts presented here where they have not been put on notice of the Director’s position. State, Dept. of Envtl. Prot. v. Stavola, 103 N.J. 425, 439, 511 A.2d 622 (1986).
I am not persuaded by the assertion that the assessment made here could have been made without a regulation in place pursuant to the authority granted to the Director by N.J.S.A. 54:10A-10 to correct direct or indirect distortions of income. N.J.S.A. 54:10A-10a provides, in relevant part:
Whenever it shall appear to the director that any taxpayer fails to maintain its records in accordance with sound accounting principles or conducts its business or maintains its records in such manner as either directly or indirectly to distort its true entire net income ... under the act ... or whereby the activity, business, receipts, expenses, assets, liabilities, income or net worth of the taxpayer are improperly or inaccurately reflected, the director is authorized and empowered, in the director’s discretion and in such manner as the director may determine, to adjust and redetermine such items____
The mere ownership by UNB of a beneficial interest in a REIT cannot be regarded as “conducting business” in a manner to distort its true entire net income. Section 4(1) was intended to induce REITs to locate in New Jersey, which is exactly what UNB did when it formed its REIT subsidiary. I.R.C. § 856(h) explicitly permits the entire beneficial ownership interest in a REIT to be vested in a single owner in the first year of its existence, and Section 4(1) of the CBT Act explicitly adopts federal requirements for qualification as a REIT. Moreover, UNB’s receipts in the form of the dividends received from Bridgewater were not improperly or inaccurately reflected. The dividends were properly reported *376 on UNB’s CBT return, and deducted pursuant to the regulations of the Director and the forms and instructions provided.
I do not wish to read N.J.S.A. 54:10A-10 in a manner which is unduly narrow, because I recognize that it can be a useful tool for the Director when a taxpayer acts improperly or not in conformity with conventional business practices. See, e.g., Stryker Corp. v. Director, Div. of Taxation, 168 N.J. 138, 165, 773 A.2d 674 (2001) (Stein, J., concurring) (quoting Director’s brief to the effect that N.J.S.A. 54:10A-10 is applicable where unorthodox business practices of the taxpayer caused misallocation of income). Adjustment of UNB’s entire net income cannot, however, be justified by resort to N.J.S.A. 54:10A-10 where the Tax Court had decided Corporate Property Investors, supra, 15 N.J. Tax 14, in 1994, and there has not, to date, been any official pronouncement by the Director which would have served to alert the taxpayer of the potential for a large deficiency assessment.
For the foregoing reasons, I conclude that the assessment in issue was invalid. UNB’s motion for summary judgment reversing the determination of the Director is therefore granted and the Director’s cross-motion is denied.

 A REIT is not included within the term “affiliated group” of corporations. I.R.C. § 1504(b)(6). Only affiliated groups are permitted to file consolidated returns. I.R.C. § 1501.

 In 1972, when REITs were first recognized by the Legislature, the CBT-was based on corporate net worth as well as on entire net income. The net worth component has since been phased out. L. 1982, c. 55.

 From documents submitted by the parties in connection with the motion, it appears that 1997 was the first year for which Bridgewater filed a CBT return. *369 While neither party asserted that 1997 was the first year for which Bridgewater made a federal REIT election, they each represented that Bridgewater qualified as a federal REIT in 1997. Because I.R.C. § 856(h) sets forth the only exception to the requirement that a REIT be owned by at least 100 persons, 1997 was apparently the first year of Bridgewater's existence as a REIT.

 No New York regulation, other administrative construction or case law permitting the disallowance of the dividend received deduction in the case of a dividend paid by a REIT could be located, nor has either party pointed the court to any such New York authority.

 The 2002 amendments to the CBT Act eliminate the dividends received deduction for a corporation owning less than fifty percent of the ownership of investment in a the corporation paying the dividend. L. 2002, c. 40, § 6. Only corporations owning at least half of the beneficial interest in a REIT would currently be affected by a rule disallowing the deduction for dividends received from REITs.