BIANCO, J.T.C.
This opinion shall serve as the court’s determination of cross motions for summary judgment filed by the parties in the above matter. Plaintiff BIS LP, Inc. (hereinafter “BIS”) seeks an abatement of $1,008,537[1] in New Jersey Corporation Business Tax (hereinafter “CBT”) assessed by defendant, Director of the Division of Taxation (hereinafter “the Director”). BIS also seeks a refund of the $1,480,524 [2] in CBT it paid on its 2003 CBT return for fiscal year 2003,[3] plus interest. The Director, in turn, seeks to affirm her final assessment determination and deny any refund.
For the reasons set forth below, the court finds that BIS is entitled to an abatement of the $1,008,537 of CBT (including interest and penalties) assessed by the Director; and BIS is further entitled to a refund of the $1,480,524 in CBT it paid during fiscal year 2003. Accordingly, BIS’ motion for summary judgment is granted and the Director’s motion for summary judgment is denied.
The facts in this case are not in dispute. BISYS Group, Inc. (hereinafter “the BISYS Group”) provides information processing and technology outsourcing services for its clients. Beginning in 1999, the BISYS Group reorganized certain of its divisions, including the insurance services, retirement services, document solutions and banking information solutions, to create a series of holding *92 company/limited partnership entities.[4] After reorganization, BISYS, Inc. (hereinafter “BISYS”) became one of the holding companies in the BISYS Group. BISYS was a wholly owned subsidiary of the BISYS Group. BIS was a wholly owned subsidiary of BISYS.
The reorganization of the banking information solutions division involved creating a limited partnership, known as BISYS Information Solutions (hereinafter “Solutions”). In November 1999, BISYS transferred 99% of the assets and liabilities of its banking information solutions division to BIS and 1% to Solutions. Thereafter, BIS contributed the assets and liabilities it received from BISYS to Solutions. BISYS and BIS entered into a limited partnership agreement whereby BISYS was the general partner with a 1% interest and BIS was the limited partner with a 99% interest. The limited partnership agreement provided that the general partner had “the sole and exclusive right to manage the business and affairs” of Solutions except for limited decisions specifically reserved to the limited partner. BIS did not have the right or the obligation to participate directly or indirectly in the active management of Solutions. Nor was BIS authorized to do or perform any act in the name of or on behalf of BISYS.
BIS filed its 2003 CBT Return and elected to be taxed as an “Investment Company” pursuant to N.J.S.A. 54:10A-4(f). In 2003, BIS’ sole interest in New Jersey was its limited partnership interest in Solutions. It did not have any place of business, property, employees, agents, or representatives in New Jersey.
Ascensus Insurance Services, Inc., a Utah corporation, was a wholly-owned subsidiary of the BISYS Group during 2003. On June 30, 2003, the BISYS Group contributed the stock of Ascensus to BISYS Insurance Services Holding Corp, a corporation formed by the BISYS Group to serve as the holding company for the insurance services division of the BISYS Group. Ascensus is a multi-state business enterprise that, in addition to managing the *93 BISYS trade name, was a service provider to the insurance industry.
BIS’ 2003 CBT Return was audited by the Division of Taxation and, as a result thereof, BIS was denied investment company status based on the Director’s claim that the 2006 amendment to N.J.AC. 18:7-1.15(b)[5] merely clarified and elaborated her prior interpretation of that statute. Furthermore, the auditor concluded that BIS had a unitary relationship with the business conducted by Solutions, therefore giving BIS enough of a constitutional presence in New Jersey to subject it to taxation. Additionally the auditor concluded that BIS had add-back items on its New Jersey partnership return that did not appear on its CBT return. Based on these findings the Director issued a Notice of Assessment dated December 1, 2005, assessing BIS for additional CBT in the amount of $889,244.74, which included penalties and interest through January 15, 2006. BIS filed a protest with the Director. The parties participated in a conference on September 29, 2006. The conferee upheld the auditor’s determination and the Director issued a Final Determination dated March 22, 2007, totaling $1,008,537 (including revised penalties and interest through April 15, 2007). BIS appealed to the Tax Court of New Jersey. The parties cross moved for Summary Judgment.
SUMMARY JUDGMENT
New Jersey’s Court Rules provide that summary judgment is appropriate where:
The judgment or order sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.
LB. 4:46 — 2(e).]
The moving party sustains the burden to show no genuine issue of material fact exists. Judson v. Peoples Bank and Trust Co., 17 *94 N.J. 67, 74, 110 A.2d 24 (1954). See also Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 916 A.2d 440 (2007). The opposing party cannot defeat the motion for summary judgment simply by pointing to any fact in dispute. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529, 666 A.2d 146 (1995). Denial of summary judgment occurs when the opposing party brings forward evidence that creates a genuine issue of material fact. Ibid.
The Coui’t finds that the present matter is ripe for summary judgment as there is no genuine issue as to any material fact.
ANALYSIS
The Corporation Business Tax Act, N.J.S.A. 54:10A-1 to-41 (hereinafter “the Act”) imposes:
[A]n annual franchise tax for each year, as hereinafter provided, for the privilege of having or exercising its corporate franchise in this State, or for the privilege of deriving receipts from sources within this State, or for the privilege of engaging in contacts within this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State.
A taxpayer’s exercise of its franchise in this State is subject to taxation in this State if the taxpayer’s business activity in this State is sufficient to give this State jurisdiction to impose the tax under the Constitution and statutes of the United States.
[N.J.S.A. 54:10A-2J
However, the Act allows a tax benefit to an investment company at N.J.S.A. 54:10A-5(d), which provides in pertinent part:
Provided, however, that the franchise tax to be annually assessed to and paid by any investment company or real estate investment trust, which has elected to report as such and has filed its return in the form and within the time provided in this act and the rules and regulations promulgated in connection therewith, shall, in the case of an investment company, be measured by 40% of its entire net income and 40% of its entire net worth____

[Ibid.]

The Act at N.J.S.A 54:10A-4(f) defines investment company as:
[A]ny corporation whose business during the period covered by its report consisted, to the extent of at least 90% thereof of holding, investing and reinvesting in stocks, bonds, notes, mortgages, debentures, patents, patent rights and other securities for its own account, but this shall not include a corporation which: ... had less than 90% of its average gross assets in New Jersey, at cost, invested in stocks, bonds, *95 debentures, mortgages, notes, patents, patent rights or other securities or consisting of cash on deposit during the period covered by its report____
[Ibid, (emphasis added).]
N.J.A.C. 18:7-1.15(a) further explains that an investment company is any corporation:
1. Whose business for the period covered by its return consisted to the extent of at least 90 percent of “qualified investment activities” which are: investing or reinvesting in stocks, bonds, notes, mortgages, debentures, patents, patent rights, and other securities or the holding thereof after investing or reinvesting therein for its own account. As used in this rule, “qualified investment assets” are stocks, bonds, notes, mortgages, debentures, patents, patent rights, publicly traded limited partnership or limited liability company interests and other securities and cash on deposit;
2. Which had for the period covered by the return 90 percent or more of its average gross assets in New Jersey, at cost, invested in “qualified investment assets” referred to in (a)l above;
[N.J.AC. 18:7-1.15(a)(1) — (2) (emphasis added).]
The Director amended N.J.A.C. 18:7-1.15, effective August 7, 2006 to eliminate the direct investment in a non-publicly traded pass-through entity from the definition of qualified investment OjSset. The added section states that:
“Qualified investment activities” and “qualified investment assets” do not include the following specific assets or activities. The receipts, direct and indirect expenses and assets connected with the following will not be included in the numerator of any test:
9. The direct investment in a non-publicly-traded pass-through entity, if that entity would not satisfy the definition of investment company if it had been organized as a corporation.
[N.J.AC. 18:7-1.15(b)(9).]
BIS argues that its limited partnership interest in Solutions is a qualified, investment asset and BIS’ holding of Solutions constitutes an investment activity.

Other Securities

N.J.AC. 18:7-1.15(a) includes other securities as a qualified, investment asset, and holding other securities as a qualified investment activity. Uniform Securities Law defines security to mean:
[A]ny note; slock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement, including, *96 but not limited to, certificates of interest or participation in real or personal property; collateral-trust certificate; preorganization certificate or subscription, transferable share; investment contract—
[N.J.S.A. 49:3-49(m) (emphasis added).]
Case law in New Jersey and elsewhere, prior to the enactment of the above amendment to N.J.A.C. 18:7-1.15 treated a limited partnership interest as a security. See Conroy v. Schultz, 80 N.J.Super. 443, 450, 194 A.2d 20 (Ch.Div.1963) (holding that participation units in limited partnerships utilized in real estate syndications were “securities” for purposes of the New Jersey Uniform Securities Law, N.J.S.A. 49:3-1 et seq.). In S.E.C. v. W.J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), the United States Supreme Court applied an investment contract analysis to determine whether an instrument was a security under Federal securities law. The Court determined that the test of an investment contract was “whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others.” Id. at 301, 66 S.Ct. at 1104, 90 L.Ed. at 1251.
Although Howey interpreted the definition of an investment contract based on the Federal definition of security, New Jersey courts have recognized that the two jurisdiction’s definitions are identical. The Conroy court stated, “[t]he Uniform Securities Law ... supplements the Federal Securities Act of 1933, 15 U.S.C.A. § 77a et seq. ____ Our Legislature, in defining the word ‘security,’ unequivocally followed the definition in the federal act of 1933, section 2(1).” Conroy, supra, 80 N.J.Super. at 450, 194 A.2d 20. “The Howey test still predominates in investment contract analysis today.” Steinhardt Group v. Citicorp, 126 F.3d 144,151 (3d Cir.1997).
In applying the investment contract analysis, courts look to the degree of managerial control exercised by the limited partner. The Second Circuit held that, “a limited partnership interest generally is a security because such an interest involves investment ‘in a common enterprise with profits to come solely from the efforts of others.’ ” Mayer v. Oil Field Systems Corp., 721 F.2d 59, 65 (2d Cir.1983) (citation omitted), on remand, 611 F.Supp. 635 *97 (S.D.N.Y.1985), aff'd., 803 F.2d 749 (2d Cir.1986). Even courts critical of Howey for its rigid use of the “solely” requirement recognize the “managerial control” test. These courts “recogniz[e] the economic realities of investments” and rely on a modified view that “the basic economic reality of a security transaction is the subjugation of the investor’s money to the risks of an enterprise over which he exercises no managerial control.” Activator Supply Co. v. Wurth, 239 Kan. 610, 722 P.2d 1081, 1086-87 (1986) (emphasis in original) (citing State v. Hawaii Market Center, Inc., 52 Haw. 642, 485 P.2d 105 (1971)). “Control,” as defined by the SEC, is “the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.” 17 C.F.R. § 230.405 (2008).
BIS did not have the right or the obligation to participate directly or indirectly in the active management of Solutions. Nor was it authorized to “do or perform any act in the name of or on behalf of the general partner or have a voice in or take part in the business affairs or operations of [Solutions].” Rather, BIS’ interest in Solutions was an investment in a common enterprise with profits to come solely from the efforts of others. As such, BIS’ 99% limited partnership interest in Solutions is an investment contract and would be considered an other security prior the 2006 amendment to N.J.A.C. 18:7-1.15.

Retroactive Application of N.J.A.C. 18:7-1.15

Under N.J.A.C. 1:30-1.2, “[u]nless otherwise specified in the rule, a rule becomes operative when [it has been duly adopted].” In addition, the interpretation of a regulation “begins with its plain language, which is to be given its ordinary meaning as long as there is no indication that the Legislature had a different intent.” In re Amendments and New Regulations at N.J.AC. 7:27-27.1, 392 N.J.Super. 117, 133, 920 A.2d 111 (App. Div.2007) (citations omitted).
During 2003, the year in which Solutions made its election, no language in the statutes or regulations suggested that interest *98 in a limited partnership could not be considered as a qualifying asset for the purposes of the investment company election. It is well settled that our courts “must give great deference to any agency’s interpretation and implementation of its rules enforcing the statutes for which it is responsible.” In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 488-89, 852 A.2d 1083 (2004) (citing In re Distmb’n of Liquid Assets, 168 N.J. 1, 10-11, 773 A.2d 6 (2001)). However, an agency’s interpretation and implementation of its rules may be reversed if: “(1) it was arbitrary, capricious, or unreasonable; (2) it violated express or implied legislative policies; (3) it offended the State or Federal Constitution; or (4) the findings on which it was based were not supported by substantial, credible evidence in the record.” University Cottage Club of Princeton New Jersey Corp. v. New Jersey Dept. of Envtl. Protection, 191 N.J. 38, 48, 921 A.2d 1122 (2007) (citing In re Taylor, 158 N.J. 644, 656, 731 A.2d 35 (1999)).
The Director argues that by amending N.J.A.C. 18:7-1.15(b), she merely clarified her interpretation of N.J.S.A 54:10A-4(f) and did not change her preexisting interpretation of that statute. The Director claims this is evidenced by the audit narrative which sets forth the Division of Taxation’s position that simply because the regulation does not make specific mention of a limited partnership interest does not necessarily mean that it is a qualifying activity.
Our courts have favored the prospective application of regulations. The Appellate Division held that, “[t]he general rule is that legislation and regulations have prospective effect. Prospectively is favored because ‘retroactive application of new laws involves a high risk of being unfair.’ ” Seashore Ambulatory Surgery Ctr., Inc. v. New Jersey Dep’t of Health, 288 N.J.Super. 87, 97, 671 A.2d 1088 (App.Div.1996) (citations omitted). The Tax Court has found that, “[e]ven though the Director has the authority to construe the statute as he has done in this case, it is unfair to penalize taxpayers through ad hoc adjudication under the facts presented here where they have not been put on notice of the Director’s position.” UNB Investment Co., Inc. v. Director, Div. of Taxation, 21 N.J.Tax 354, 375 (2004) (citing State, Dep’t of Envtl. Prot. v. Stavola, 103 N.J. 425, 439, 511 A.2d 622 (1986)).
*99 The Appellate Division recently clarified the treatment of an amended regulation in Praxair Technology, Inc. v. Director, Div. of Taxation, 404 N.J.Super. 287, 961 A.2d 738 (App.Div.2008), certif. granted, 199 N.J. 130, 970 A.2d 1047 (2009). In 1996 an amendment was made to N.J.A.C. 18:7-1.9(b). An example was added stating that a foreign corporation that receives fees as a result of licensing trademarks to a New Jersey parent corporation is subject to the CBT. Praxair argued that it should not be subject to taxation on such income in the years before the regulation was amended. The court stated that:
Although ... the pre-1996 terms of the regulation provide some support for the Director’s argument that the activities at issue were arguably within the ambit of taxable activity under the CBT, it is apparent that sufficient doubt about the clarity of that conclusion existed to engender the perceived need for the explanatory example appended to the regulation in November 1996____
As regards the tax liability of a corporation in plaintiffs position, there can be no clearer indication of the pre-1996 understanding that prevailed in the subject matter area than the perceived need to add the clarifying example to N.J.A.C. 18:7 — 1.9(b), the regulation that governed. Plaintiff does not contend that it is not bound by the broadened understanding of the regulation’s impact effected by the 1996 modification; only that it cannot be bound by the broader impact before the scope of the tax was clarified by the change. We accept that argument as a logical application of a principle articulated in Metromedia v. Director, Division of Taxation, 97 N.J. 313, 337, 478 A.2d 742 (1984), proscribing retroactive application except by expressed legislative design of any standard that must be articulated via a properly promulgated regulation rather than in a less formal change of policy, see id. at 331-32, 478 A.2d 742. See also In re Progressive Casualty Ins. Co., 307 N.J.Super. 93, 100-101, 704 A.2d 562 (App.Div.1997); Frank A. Greek & Sons v. Township of South Brunswick, 257 N.J.Super. 94, 105, 607 A.2d 1359 (App.Div.), certif. denied, 130 N.J. 602, 617 A.2d 1223 (1992), cert. denied, 507 U.S. 1031, 113 S.Ct. 1848,123 L.Ed.2d 472 (1993).
[Praxair, supra, 404 N.J.Super. at 294-95, 961A.2d 738.1
The court held that Praxair was not considered doing business in years 1994-1996 as a result of the amendment, but would be subject to tax in later years if applicable.
The Director does have the ability to promulgate regulations that interpret statutes. Fairness dictates that such regulations be applied prospectively. Although the Director argues that the amendment’s purpose was to clarify her interpretation of the statute, there was no evidence of such intent prior to the amendment. BIS’ election to file its 2003 CBT return as an investment *100 company was based on the statute, regulation, and ease law then known and in effect. It was solely due to the retroactive application of the amendment that the Director imposed a CBT obligation on BIS.
The Director does not argue the validity of BIS’ investment contract analysis. Rather, she argues that the 2006 amendment evidences her interpretation of what constitutes a security. Since BIS’ positions were contrary to that interpretation, then, according to the Director, BIS is liable for additional tax.
This court finds that the holding in Praxair is controlling in the present case. BIS’ CBT obligation for fiscal year 2003 cannot be governed by a regulation that was enacted in 2006. The amendment must only be applied prospectively.

Constitutional Presence in New Jersey

BIS seeks a refund of $1,480,524 because it had no constitutional presence in New Jersey in 2003. The Act requires that:
Every domestic or foreign corporation which is not hereinafter exempted shall pay an annual franchise tax ... for the privilege of having or exercising its corporate franchise in this State, or for the privilege of deriving receipts from sources within this State, or for the privilege of engaging in contacts within this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State.
A taxpayer’s exercise of its franchise in this State is subject to taxation in this State if the taxpayer’s business activity in this State is sufficient to give this State jurisdiction to impose the tax under the Constitution and statutes of the United States.
[N.J.S.A 54:10A-2J
The regulations explain that:
A foreign corporate limited partner of a limited partnership doing business in New Jersey is considered exercising its franchise to do business in this State, doing business in this State or employing capital in this State, and, therefore, is subject to tax under N.J.S.A 54:10A-2 and filing a corporation business tax return, if:
1. The limited partner is also a general partner of the limited partnership;
2. The foreign corporation limited partner, in addition to the exercise of its rights and powers as a limited partner, takes an active part in the control of the partnership business;
3. The foreign corporate limited partner meets the criteria set forth in N.J.AC. 18:7-1.9 or 1.6; or
*101 4. The business of the partnership is integrally related to the business of the foreign corporation.
[N.J.AC. 18:7 — 7.6(c).]
The first two prongs of this test are not satisfied by BIS. The focus of the analysis will be on the third and fourth prongs. N.J.AC. 18:7-1.6 provides that:
(a) Every corporation not expressly exempted is deemed to be subject to tax under the Act and is required to file a return and pay a tax thereunder provided it falls within any one of the following:
2. If a foreign corporation:
hi. Doing business in this State; or
iv. Employing or owning capital in this State; or
v. Employing or owning property in this State; or
vi. Maintaining an office in this State; or
vii. Deriving receipts from sources within this State; or
viii. Engaging in contacts within this State.
(b) A taxpayer’s exercise of its franchise in this State is subject to taxation in this State if the taxpayer’s business activity in this State is sufficient to give this State jurisdiction to impose the tax under the Constitution and statutes of the United States.

[Ibid.]

N.J.AC. 18:7-1.9 explains:
(a) The term “doing business” is used in a comprehensive sense and includes all activities which occupy the time or labor of men for profit.
1. Regardless of the nature of its activities, every corporation organized for profit and carrying out any of the purposes of its organization within the State shall be deemed to be “doing business” for the purposes of this Act.
2. In determining whether a corporation is “doing business”, it is immaterial whether its activities result in a profit or a loss.
(b) Whether a foreign corporation is doing business in New Jersey is determined by the facts in each case. Consideration is given to such factors as:
1. The nature and extent of the activities of the corporation in New Jersey;
2. The location of its offices and other places of business
3. The continuity, frequency and regularity of the activities of the corporation in New Jersey;
4. The employment in New Jersey of agents, officers and employees;
5. The location of the actual seat of management or control of the corporation. [Ibid.']
BIS was not a general partner; did not have control of the business; did not have a place of business in New Jersey; did not *102 have employees, agents, representatives, or property in New Jersey.[6] BIS and Solutions are separate entities. This is true even though BIS receives 100% of its income from its limited partnership interest. Despite the Director’s argument it is not clear from N.J.A.C. 18:7-8.12 (defining the phrase other business receipts) that a partnership distribution is considered a business receipt. Assuming arguendo that the Director’s presumption is true, BIS’ business activity in New Jersey is still not sufficient to give this State jurisdiction to impose the tax.
The fourth prong of N.J.A.C. 18:7-7.6(c) that would classify a foreign corporate limited partner of a limited partnership as doing business in New Jersey requires the business of the New Jersey partnership to be integrally related to the business of the foreign corporation. N.J.A.C. 18:7-7.6(e)(4). States are prohibited by the Due Process and Commerce Clauses from imposing tax based on “value earned outside its borders.” Central NationalGottesman, Inc. v. Director, Div. of Taxation, 14 N. J.Tax 545, 551 (1995), aff'd, 291 N.J.Super. 277, 677 A.2d 265 (App.Div.), certif. denied, 146 N.J. 569, 683 A.2d 1164 (1996) (citing ASARCO, Inc. v. Idaho State Tax Comm’n, 458 U.S. 307, 315, 102 S.Ct. 3103, 3108, 73 L.Ed.2d 787, 794 (1982)). To avoid an unconstitutional tax New Jersey uses a unitary business/formula apportionment method to tax multistate entities:
The unitary business/formula apportionment method is a very different approach to the problem of taxing businesses operating in more than one jurisdiction. It rejects geographical or transactional accounting, and instead calculates the local tax base by first defining the scope of the ‘unitary business’ of which the taxed *103 enterprise’s activities in the taxing jurisdiction form one part, and then apportioning the total income of the ‘unitary business’ between the taxing jurisdiction and the rest of the world on the basis of a formula taking into account objective measures of the corporation’s activities within and without the jurisdiction. This court long ago upheld the constitutionality of the unitary business/formula apportionment method, although subject to certain constraints.
[Central National-Gottesman, Inc., supra, 14 N.J.Tax at 552 (quoting Container Corp). of America v. Franchise Tax Bd., 463 U.S. 159, 165, 103 S.Ct. 2933, 2940, 77 L.Fd.2d 545, 553 (1983)).]
Although there is not a single test to determine whether a business is unitary, the factors to be considered include:
i. Substantial intercompany-partnership transactions;
ii. The partnership interest is the only or the most substantial asset of the corporation;
iii. The partnership interest produces all or most of the income of the corporation;
iv. The corporation and the partnership are in the same line of business;
v. There is substantial overlapping of employees and offices; and/or
vi. There is sharing of operational facilities, technology and/or know-how.
[N.J.A.C. 18:7-7.6(g)(3)J
In Mobil Oil Corp. v. Comm’r of Taxes of Vermont, 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980), a New York corporation headquartered in New York City was held to be a functionally integrated enterprise conducting an integrated petroleum business. Mobil did not own refineries in Vermont, but marketed petroleum and related products in the state. The Court found that income from the foreign subsidiaries was properly included in Mobil’s Vermont tax base. The Court ruled the same way in Exxon Corp. v. Dep’t of Revenue of Wisconsin, 447 U.S. 207, 100 S.Ct. 2109, 65 L.Ed.2d 66 (1980), which had substantially the same facts as Mobil, and rejected Exxon’s argument that separate accounting for each department was a distinguishing factor.
The unitary business principle was limited in F.W. Woolworth Co. v. Taxation & Revenue Dept., 458 U.S. 354, 102 S.Ct. 3128, 73 L.Ed.2d 819 (1982) and ASARCO, Inc., supra,:
In ASARCO, Idaho claimed a right to tax a proportionate share of that company’s income derived from five foreign subsidiaries. ASARCO was incorporated in New Jersey and headquartered in New York and its business involved the mining, smelting and refining of various metals. AñARCO’s primary activity in Idaho was the operation of a silver mine which amounted to 2.5% of the company’s total *104 activity. ASARCO owned between 34% and 53% of the shares of the subsidiaries sought to be taxed.
Although these subsidiaries were in the same line of business as ASARCO, the Supreme Court noted that ASARCO did not exercise any control over the foreign subsidiaries and held that they were discrete business enterprises whose activities were not taxable by Idaho. In Woolworth, the Court similarly rejected the inclusion in New Mexico’s tax base of income from four foreign subsidiaries, three of which were wholly owned, which were engaged in the same business as the parent. The holding was based on a factual determination of a lack of functional integration, centralization of management and economies of scale.
[Central NationahJIottesman, Inc., supra, 14 N. J.Tax at 553-54.]
The Woolworth principle was expanded in Allied-Signal, Inc. v. Director, Div. of Taxation, 504 U.S. 768, 112 S.Ct. 2251, 119 L.Ed.2d 533 (1992), where Bendix Corporation, incorporated in Delaware and headquartered in Michigan, purchased stock in ASARCO, Inc., located in New Jersey and headquartered in New York. Bendix primary operation in New Jersey was the development and manufacturing of aerospace products. ASARCO produced nonferrous metals. Bendix sold its 20.6% interest in ASARCO resulting in $211.5 million of income. The Court found that New Jersey was not permitted to include the gain realized on the sale of the stock in the taxpayer’s apportionable tax base because the two companies were not part of one unitary business. “Functional integration and economies of scale could not exist because, as the parties stipulated, [the companies] were unrelated business enterprises.” Id. at 788, 112 S.Ct. at 2263, 119 L.Ed.2d at 552. Moreover, even though Bendix had two of the fourteen seats on ASARCO’s board of directors, there was no centralization of management, since the corporation did not own enough ASARCO stock to have the potential to operate ASARCO as an integrated division of a single unitary business since even “potential control is not sufficient.” Id. at 788, 112 S.Ct. at 2263, 119 L.Ed.2d at 552-53 (citation omitted). Contrary to the State Supreme Court’s view, “the fact that an intangible asset was acquired pursuant to a long-term corporate strategy of acquisitions and dispositions does not turn an otherwise passive investment into an integral operational one.” Id. at 788, 112 S.Ct. at 2263-64, 119 L.Ed.2d at 553.
Courts have found that even a minimal level of control between subsidiaries constituted a unitary business. Container Corp. of
*105 America v. Franchise Tax Bd., 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983):
Container Corporation, a vertically integrated paperboard packaging manufacturer, was a Delaware corporation headquartered in Illinois and doing business in California. The State of California sought to include sales from Container Corporation’s foreign subsidiaries in the three-part allocation formula. These subsidiaries were 66% to 100% owned by Container Corporation and were engaged in essentially the same business. Although Container Corporation did not take an active role in the management of these subsidiaries, the parent generally oversaw the subsidiaries’ operations and there was some overlapping of officers and directors. These factors contributed to the Court’s determination that Container Corporation was a functionally integrated enterprise and that the subsidiaries’ income should be taxed under unitary business principles.
[Central National-Gottesman, Inc., supra, 14 N.J. Tax at 554.]
This court finds that Solutions and BIS were not integrally-related. Rather BIS was a passive investor in Solutions. BIS had no control or potential for control in the limited partnership. It was also not in the same line of business. BIS is a holding company that was implemented to limit liability at that level. Solutions is in the data processing business. Its interest is more akin to an example in the regulations, which illustrates that a foreign corporation that simply holds a limited partnership interest in a foreign New Jersey partnership and is not part of the unitary business of the partnership is not subject to the CBT. The regulation provides in part:
Corporation LMN holds a limited partnership interest ... The corporation and the partnership are not part of a unitary business, and the limited partnership does not have liabilities to third parties. LMN is not subject to corporation business tax in New Jersey since it is a true limited partner].]
[N.J.A.C. 18:7-7.6, example IV.]
BIS’s claim for refund is allowed in its entirety.

Royalty Payment Add-Back

The Director determined that BIS’ net income should include an add-back for royalty expense payments by Solutions to BISYS, Inc. BIS maintains that Solutions made royalty expense payments to Ascensus Insurance Services, Inc. The Director claims that Solutions made the disputed royalty expense payments to BISYS.
The parties disagree as to the identity of the entity making the royalty payments as well as that of the entity receiving the *106 payments. Both sides cite case law and regulations. The applicable law requires a determination of percentage ownership between entities and their interactions with one another in order to determine if the add-back provision comes into play. Because this court does not know who the entities making the royalty payments were, it cannot make a determination as to whether or not they are related. That determination, however, is immaterial since the court finds that no tax is due for fiscal year 2003.

Conclusion

Accordingly, the Director’s motion for summary judgment is denied and BIS’s motion for summary judgment is granted. The $1,008,537 CBT assessment must be abated because the retroactive application of N.J.A.C. 17:7-1.15 cannot be sustained. In addition, BIS is entitled to a refund of $1,480,524 paid, plus interest, since BIS does not have sufficient nexus with New Jersey to justify the CBT payment. The Tax Court Administrator/Clerk is directed to enter judgment in accordance with this opinion.
*107 ATTACHMENT
APPENDIX - BIS ORGANIZATIONAL CHART
[[Image here]]
Reorganization of Banking Information Solutions Division Step 1
[[Image here]]
Step 2
[[Image here]]

 This amount is the Final Determination of the Director after protest, including penalties and interest through April 15, 2007.

 This amount was determined by BIS.

 BIS operates on a July 1 to June 30 fiscal year. For the present matter the fiscal year is July 1, 2002 to June 30, 2003.

 See the Organizational Chart in the Appendix attached hereto.

 The amendment removed the direct investment in a non-publiciy traded pass-through entity from the definition of "qualified investment asset.”

 Furthermore:
The fact that nonresident corporations gain certain incidental benefits from a state should not be the primary basis to impose [State taxes on them]. Nonresident corporations ... receive only minimal state benefits.... Benefits such as fire and police protection, educational services, social services, or transportation facilities [which] are not utilized by, or available to, nonresident corporations that have no tangible property or personnel located in the taxing state. Therefore, states should not obligate nonresident corporations to subsidize the benefits provided to in-state corporations and individuals based solely on income derived from in-state customers.
[Megan A. Stombock, Economic Nexus and Nonresident Corporate Taxpayers: How Far Will it Go?, 61 Tax Law. 1225, (2008) (citation omitted).]