The opinion of the court was delivered by
LISA, P.J.A.D.
In a published Tax Court opinion, Judge Vito L. Bianco granted the summary judgment motion of plaintiff, BIS LP, Inc. (BIS), and denied the summary judgment motion of defendant, Director of the Division of Taxation (Director), thus ordering a refund to BIS for corporation business tax (CBT) paid for fiscal year 2003 and abating an assessment for an additional amount. BIS LP, Inc. v. Dir., Div. of Taxation, 25 N.J.Tax 88, 91 (Tax 2009). What follows is a brief summary of the undisputed facts, as set forth more fully in the Tax Court opinion, id. at 91-93, and as contained in the record before us.
BIS is a foreign corporation. It has no place of business, property, employees, agents, or representatives in New Jersey. Its only interest in New Jersey (and its only asset) is a ninety-nine percent limited partnership interest in BISYS Information Solutions L.P. (Solutions), which does business in New Jersey. This status was achieved through a series of reorganization steps by BISYS Group, Inc. (BISYS Group), which provides processing and technology outsourcing services for its clients, including banks, investment management and mutual fund companies, and insurance companies. As a result of the restructuring, BIS is a wholly *492 owned subsidiary of a holding company, BISYS, Inc. (BISYS), which, in turn, is a holding company in the BISYS Group.
The limited partnership, Solutions, was formed thusly: BISYS transferred ninety-nine percent of the assets and liabilities of its banking information solutions division to BIS and one percent to Solutions. BIS then contributed the assets and liabilities it had received from BISYS to Solutions. Pursuant to a limited partnership agreement, BISYS, with a one percent interest, is the general partner, and BIS, with a ninety-nine percent interest, is the limited partner. The agreement conferred on the general partner the “sole and exclusive right to manage the business and affairs” of Solutions, with some limited exceptions reserved for the limited partner. Conversely, the agreement provided that BIS “shall not have either the obligation or the right to take part, directly or indirectly, in the active management” of Solutions, “perform any act in the name of or on [its] behalf,” or “have a voice in or take part in [its] business affairs or business operations.” BIS and BISYS are both Delaware corporations, and the partnership was formed under the Delaware Revised Uniform Limited Partnership Act.
BIS filed its 2003 CBT Return, electing to be taxed as an “Investment Company” pursuant to N.J.S.A 54:10A-4(f), which limits tax liability to measurement by forty percent of entire net income and forty percent of entire net worth. N.J.S.A. 54:10A-5(d). The Director disallowed the investment company election. Judge Bianco reversed that determination. The Director does not appeal from that aspect of the Tax Court’s decision.
BIS also contended it owed no CBT because it did not have a constitutional presence in New Jersey. The Director rejected that position, concluding that BIS had a unitary relationship with the business conducted by Solutions in New Jersey. The Director also imposed certain addbacks to BIS’ reported income. Judge Bianco disagreed and found that BIS lacked a sufficient nexus to New Jersey to make it subject to the New Jersey CBT. Because no tax was due, the judge found it unnecessary to address the *493 validity of addbaeks. It is from these decisions by the Tax Court that the Director appeals.
More particularly, the Director presents these arguments on appeal:
THE TAX COURT’S NEXUS AND ADDBACK RULINGS SHOULD BE REVERSED BECAUSE UNDER THE GOVERNING CBT STATUTES AND REGULATIONS, THE UNDISPUTED MATERIAL FACTS OF THIS CASE DEMONSTRATED THAT BIS WAS “DOING BUSINESS” IN NEW JERSEY AND, THROUGH ITS $49M PARTNERSHIP DISTRIBUTION, HAD TAXABLE NEW JERSEY RECEIPTS FOR FY 2003.
A. The Tax Court’s Entry of Summary Judgment Should Be Reversed Because It Overlooked or Underevaluated Evidence and Drew Incorrect Legal Conclusions from the Undisputed Material Facts Presented by BIS and [the Director].
B. BIS Is Not Entitled to a Refund of the CBT Solutions Properly Remitted to New Jersey on Behalf of BIS Because BIS Had CBT Nexus for FY 2003 Since It Was Doing Business in New Jersey and Deriving Taxable Receipts from Solutions.
C. The Tax Court Should Have Found That BIS’S ENI [entire net income] Included Addbaeks Consistent with the Royalty and Tax Expenses Solutions Added Back to Its Income Because BIS and Solutions Were Unitary and BIS Had Nexus Here.
We reject the Director’s arguments and affirm substantially for the reasons stated by Judge Bianco in his published opinion. We add the following to address the issues raised on appeal.
I.
Our review of the grant of summary judgment is de novo, and we apply the same standard as the Tax Court judge. Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div.), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998); Coastal Eagle Point Oil Co. v. W. Deptford Twp., 19 N.J.Tax 301, 304 (App.Div.2001); see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29, 666 A.2d 146 (1995). We generally extend enhanced deference to the expertise of the Tax Court, but we also recognize the expertise of the Director, particularly when the Director’s expertise is exercised in the “specialized and complex area” of the tax statutes. Metromedia, Inc. v. Dir., Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984).
*494 II.
In Point A, the Director first contends that BIS was plainly devised to export taxable income from New Jersey in contravention of measures taken by the New Jersey Legislature in 2001 and 2002 to deter inappropriate CBT loss. However, the Director admitted all material facts set forth in BIS’ statement of undisputed material facts, including those relating to the corporate restructuring and its purposes, which did not include tax avoidance. And, in a counter-statement of material facts, the Director did not state that the restructuring arose from a plan to avoid a fair share of tax due to New Jersey. Indeed, the Director’s counter-statement of material facts, supported by a certification of the conferee of the Conference and Appeals Branch of the Division of Taxation, included these findings in the conferee’s conference report, which also do not support the Director’s claim:
The BISYS Group reorganized its operating divisions to create a series of holding company/limited partnership structures in order to accomplish the purposes of: Aligning the functional lines of business operations; Limit liability at the holding company level; Facilitate further acquisitions and dispositions; and to minimize administrative costs and operating tasks.
Therefore, the record does not support the improper purpose now urged by the Director.
The Director further argues that the judge disregarded undisputed evidence demonstrating the unitary nature of BIS, Solutions, and BISYS. We do not agree. In broad terms, Judge Bianco concluded:
This court finds that Solutions and BIS were not integrally related. Rather BIS was a passive investor in Solutions. BIS had no control or potential for control in the limited partnership. It was also not in the same line of business. BIS is a holding company that was implemented to limit liability at that level. Solutions is in the data processing business. Its interest is more akin to an example in the regulations, which illustrates that a foreign corporation that simply holds a limited partnership interest in a foreign New Jersey partnership and is not part of the unitary business of the partnership is not subject to the CBT.
[BIS, supra, 25 N.J.Tax at 105.]
The Director argues that in reaching that conclusion the judge failed to consider the rights and obligations reserved to BIS in the Solutions agreement. We are unpersuaded by this argument. *495 The judge set forth some of the details of the Solutions agreement:
BISYS and BIS entered into a limited partnership agreement whereby BISYS was the general partner with a 1% interest and BIS was the limited partner with a 99% interest. The limited partnership agreement provided that the general partner had “the sole and exclusive right to manage the business and affairs” of Solutions except for limited decisions specifically reserved to the limited partner. BIS did not have the right or the obligation to participate directly or indirectly in the active management of Solutions. Nor was BIS authorized to do or perform any act in the name of or on behalf of BISYS.
[Id. at 92.]
The Solutions agreement requires the unanimous consent of BIS and BISYS to admit additional partners, merge, or consolidate the partnership with another entity. The Director emphasizes that both partners were required to consent to the sale or other transfer of any partner’s interest in Solutions and the non-selling partner had the right of first refusal regarding a selling partner’s sale of its interest. These limited joint decisions do not indicate the unitary nature of BIS, BISYS, and Solutions, or establish that BIS was doing business in New Jersey. BISYS controlled the ongoing business activities of Solutions.
The Director further contends that BIS and Solutions had the same operating location in New Jersey. This contention is not supported by the record, which establishes that BIS had no operating location in New Jersey. Indeed, the Director admitted BIS’ statement of undisputed material facts that it did not have a place of business in New Jersey, and no employees, agents, representatives, or property in New Jersey. We find unpersuasive the Director’s effort to relitigate this point referring to the “e/o” address for BIS in the Solutions agreement, which lists BIS’ address as “e/o The BISYS Group, Inc.” at 150 Clove Road in Little Falls, New Jersey.
“In care of’ is not an ordinary address signifying a place of business and does not indicate that BIS has employees or property at that address. Courts have explained that “in care of” signifies a temporary situation. See Jackson v. United States, 526 F.3d 394, 397 (8th Cir.2008) (citing Webster’s Third New International Dictionary 338 (1961) and noting that “c/o” means “tempo *496 rary charge”); Winters v. Hart, 162 Ohio App.M 15, 832 N.E.2d 753, 756 (stating that “[t]he symbol ‘c/o’ means ‘in care of and that another has mere custody or temporary charge over an item belonging to another”), review denied, 107 Ohio St.3d 1410, 836 N.E.2d 1230 (2005). Further, Solutions’ principal place of business and operating facility is 2091 Springdale Road, Cherry Hill, which is also BISYS’ address. There is no indication that BIS has an address at that location. These facts do not substantiate the Director’s claim that BIS has employees, agents, representatives, or property in New Jersey.
The Director also points out that BISYS, the general partner in Solutions, shared corporate officers with BIS, as evidenced by the fact that the same person signed the Solutions agreement as “EVP,” (presumably meaning “Executive Vice President”) of both BISYS and BIS. In addition, the individual who attested the Solutions agreement as Secretary for BISYS also did so for BIS. However, the sharing of some officers and office space has been found to be insufficient to show a unitary business. See Cent. Nat’l-Gottesman, Inc. v. Dir., Div. of Taxation, 14 N.J.Tax 545, 557-58 (Tax 1995) (two divisions were not unitary even though they shared several senior officers, used the same pension fund and employee benefits program, were serviced by a common payroll department, and shared office space, mailroom, and a telephone system), aff'd, 291 N.J.Super. 277, 677 A.2d 265 (App.Div.), certif. denied, 146 N.J. 569, 683 A.2d 1164 (1996).
In support of his argument in Point B that BIS had a CBT nexus for fiscal year 2003, the Director relies on New Jersey statutes and regulations, and ease law and legislative history interpreting those provisions, to support the conclusion that BIS and Solutions conducted a unitary business. The Director also relies on decisions of the United States Supreme Court.
The Director begins the analysis with N.J.S.A. 54:10A-2, which provides that CBT is imposed on a regular periodic basis on
[ejvery domestic or foreign corporation ... for the privilege of having or exercising its corporate franchise in this State, or for the privilege of deriving receipts from sources within this State ..., the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State.
*497 [Emphasis added.1
The Director relies on the emphasized portion of this provision, which was enacted as part of the Business Tax Reform Act, L. 2002, c. 40, that was effective July 2, 2002, well before the close of Solutions’ and BIS’ fiscal year 2003. The Act also amended N.J.S.A. 54:10A-2, to add the following provision:
A taxpayer’s exercise of its franchise in this State is subject to taxation if the taxpayer’s business activity is sufficient to give this State jurisdiction to impose the tax under the Constitution and statutes of the United States.
BIS responds that this added provision states the obvious, namely, that a state’s taxing power of multi-state business entities is constitutionally constrained, and that Judge Bianco correctly concluded that BIS had no constitutional presence in or nexus to New Jersey in fiscal year 2003. The Director nevertheless contends that the Tax Court failed to consider that these amendments demonstrate the Legislature’s intent that the Corporation Business Tax Act (CBT Act), N.J.S.A. 54:10A-1 to -41, apply broadly to all circumstances permitted by the federal and state constitutions.
The legislative history of the amendments does not illuminate the issue. The sponsor’s statement and committee statements merely reveal the general intent to close loopholes to prevent multi-state corporations from transferring their profits to related out-of-state companies. Assembly Budget Committee, Statement to A. 2501 at 1 (June 27, 2002). However, such an intent, like the statutory provisions themselves, cannot override constitutional limitations on a state’s taxing power.
In determining the nexus BIS had with New Jersey, Judge Bianco cited to N.J.S.A. 54U0A-2, N.J.A.C. 18:7-7.6(c), N.J.A.C. 18:7-1.6 and N.J.A.C. 18:7-1.9. BIS, supra, 25 N.J.Tax at 100-01. He concluded that BIS had a limited partner status and did not have a place of business, agents, representatives, or property in New Jersey. Id. at 101-02. He found that BIS was not integrally related with Solutions and did not have sufficient business activity to give New Jersey jurisdiction to impose tax under the Constitution. Id. at 102.
*498 The Director’s argument that the judge failed to evaluate the legislative changes to the CBT Act is to no avail because, notwithstanding the legislative effort to close CBT loopholes, the constitutional test remains intact. Judge Bianco applied the correct statutory provisions and relevant ease law without the need to discuss the legislative history of changes made to the CBT Act.
The Director claims that BIS’ continuing financial oversight of Solutions was safeguarded in the Solutions agreement because BIS retained the right to inspect Solutions’ books and records, and Solutions was required to furnish quarterly financial reports and income tax returns to BIS. The Director adds that BIS also made capital contributions and shared in Solutions’ significant profits in accordance with its ninety-nine percent partnership interest.
In determining that a business is unitary, the relevant statutory provisions and regulations do not set forth an exhaustive list of elements or prescribe the weight attributable to different elements. The right to inspect books, records, reports, and returns does not show that BIS controlled Solutions. However, N.J.A.C. 18:7-7.6(g)(3) lists factors that might suggest a unitary business: the partnership interest is the only or the most substantial asset of the corporation; the partnership interest produces all or most of the income of the corporation; the corporation and the partnership are in the same line of business; there is substantial overlapping of employees and offices; and there is sharing of operational facilities, technology, or know-how.
Here, the partnership interest was BIS’ only or most substantial asset, and it produced BIS’ income. However, BIS was not in the same line of business as Solutions. Nor, as we have stated, was there a “substantial” overlapping of officers, and there was no sharing of offices, operational facilities, technology, or know-how.
Based on these arguments, the Director claims that BIS was doing business and derived receipts from New Jersey consistent with N.J.S.A. 54:10A-2 and -15.7, and N.J.A.C. 18:7-1.6 and -1.9. Judge Bianco, however, was aware of these statutory and regulatory provisions and applied them to the underlying facts. Reviewing the matter de novo, we are satisfied that the sharing of some *499 corporate officers does not satisfy the requirements of the CBT Act and its implementing regulations. In addition, BIS was not in the same line of business as Solutions, and BIS did not control Solutions.
Next, the Director asserts that decisions of the United States Supreme Court support the claim that New Jersey may impose the CBT based on the unitary business of BIS and Solutions. The Director relies on MeadWestvaco Corp. v. Illinois Department of Revenue, 553 U.S. 16, 128 S.Ct. 1498, 170 L.Ed.2d 404 (2008). In that case, the Court applied the unitary business principle and determined that the State of Illinois unconstitutionally taxed an apportioned share of the capital gain realized by an out-of-state corporation on the sale of one of its business divisions. Id. at 19, 128 S.Ct. at 1502, 170 L.Ed.2d at 409. The case does not support the Director’s argument, other than to set forth the parameters of the governing principles that affect taxation of a unitary business. The Court explained:
The “broad inquiry” subsumed in both constitutional requirements [from the Commerce Clause and the Due Process Clause] is ‘“whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state’ ”—that is, “ ‘whether the state has given anything for which it can ask return.’ ” ASARCO Inc. v. Idaho Tax Comm’n, 458 U.S. 307, 315, 102 S.Ct. 3103, 3108, 73 L.Ed.2d 787, 794 (1982) (quoting Wisconsin v. J.C. Penney Co., 311 U.S. 435, 444, 61 S.Ct. 246, 250, 85 L.Ed. 267, 270-71 (1940)).
[Id. at 24-25, 128 S.Ct. at 1505, 170 L.Ed.2d at 412.]
The Director argues that Judge Bianco’s resort to a formalistic application of the unitary business principle gives short shrift to the United States Supreme Court’s acknowledgement in Allied-Signal, Inc. v. Director, Division of Taxation, 504 U.S. 768, 112 S.Ct 2251, 119 L.Ed.2d 533 (1992), of the evolution of this principle and overlooks the legal standards that apply to BIS. In AlliedrSignal, the Court explained that although a parent company might have the potential to operate its subsidiaries as integrated divisions of a single unitary business, that potential was not significant if the subsidiaries in fact comprise discrete business operations. Id. at 781, 112 S.Ct at 2260, 119 L.Ed.2d at 548. The Court noted that three objective factors must be considered in determining whether related entities are unitary, that is, whether there exist: *500 (1) functional integration; (2) centralization of management; and (3) economies of scale. Ibid, (citing F.W. Woolworth Co. v. Taxation & Revenue Dep’t of N. M., 458 U.S. 354, 364, 102 S.Ct. 3128, 3135, 73 L.Ed.2d 819, 828 (1982)).
Here, there was no functional integration nor economies of scale because BIS and Solutions were engaged in different businesses: BIS was an investment company (as the Director now concedes), and Solutions’ business was banking information data processing. Sharing a mailing address and certain corporate officers does not show that there was centralized management for Solutions and BIS.
The Director claims that equally important is the “flow of values” between Solutions and BIS that the Court set forth in Allied-Signal, supra, 504 U.S. at 783, 112 S.Ct. at 2260-61, 119 L.Ed.2d at 549. The Court explained:
[U]nitary business may exist without a flow of goods between the parent and subsidiary, if instead there is a flow of value between the entities. [Container Corp. of Am. v. Franchise Tax Bd., 463 U.S. 159, 178, 103 S.Ct. 2933, 2947, 77 L.Ed.2d 545, 561 (1983) ]. The principal virtue of the unitary business principle of taxation is that it does a better job of accounting for “the many subtle and largely unquantifiable transfers of value that take place among the components of a single enterprise” than, for example, geographical or transactional accounting. Id. at 164-165,103 S.Ct. at 2940, 77 L.Ed.2d at 553 (citing Mobil Oil [v. Comm’r of Taxes of Vt.], 445 U.S. [425], 438-439 [100 S.Ct 1223, 1232, 63 L.Ed.2d 510, 521-22 (1980)]).

[Ibid.]

Because BIS and Solutions were not involved in a single enterprise or line of business, the Court’s discussion of a flow of value is not relevant here.
The Director argues that BIS’ limited partnership interest in Solutions was its sole asset, with a reported value of $158,708,606. Solutions was the sole source of BIS’ $49 million partnership distribution (with $24,688,054 earned from New Jersey sources). The Director asserts that partnership distributions are considered business receipts pursuant to N.J.A.C. 18:7-8.12. The Director thus argues that BIS existed only to own ninety-nine percent of Solutions, to derive receipts from Solutions, and to attempt to profit tax-free from Solutions by exporting those taxable receipts from New Jersey.
*501 This argument is flawed because the record does not support the claim that BIS was created only to attempt to export taxable receipts from New Jersey. Further, N.J.A.C. 18:7-8.12 does not specifically address partnership distributions as a business receipt to be taxed. Under the principles set forth by the United States Supreme Court and the New Jersey courts, and the statutory and regulatory framework in New Jersey, the Director has not shown that Judge Bianco erred in finding no constitutional basis for imposing the CBT at issue.
In Point C, the Director argues that the judge erred by failing to find that BIS’ entire net income included addbacks consistent with the royalty and tax expenses Solutions added back to its income. In light of our conclusion that BIS did not owe any CBT for fiscal year 2003, this issue is moot. Therefore, like the Tax Court judge, we decline to address it.
III.
The Director argues that because Solutions remitted the CBT on behalf of BIS, the judge erred in ordering the refund of $1,480,524 to BIS. According to the Director, if a refund is due, it should be ordered paid to Solutions, not BIS.
This issue has not been properly raised. It was not articulated in a separate point heading in the Director’s initial brief. See R. 2:€5—2(a)(5); Almog v. Israel Travel Advisory Serv., Inc., 298 N.J.Super. 145, 155, 689 A.2d 158 (App.Div.1997), appeal dismissed, 152 N.J. 361, 704 A.2d 1297, cert. denied, 525 U.S. 817, 119 S.Ct. 55, 142 L.Ed.2d 42 (1998). The only analysis of this issue is found in the Director’s reply brief. It is improper to introduce new issues in a reply brief. Randolph Town Ctr., L.P. v. Cnty. of Morris, 374 N.J.Super. 448, 452 n. 2, 864 A.2d 1191 (App.Div. 2005), aff'd in part, vacated in part on other grounds, 186 N.J. 78, 891 A.2d 1202 (2006); In re Bell Atl.-N.J., Inc., 342 N.J.Super. 439, 442-43, 776 A.2d 926 (App.Div.2001).
Although the issue has not been properly raised, the public interest in the matter dictates that it should be decided on the merits. However, we do not believe a reviewing court should *502 decide the issue in the first instance, especially because the record is insufficient to allow for an informed decision on the issue and it has not been adequately briefed before us. Further, the expertise of the Tax Court should be applied. Accordingly, we remand for that limited purpose.
Affirmed and remanded. We do not retain jurisdiction.